## 10205

### JOHNSON v. ATLANTIC COAST LINE RY. CO.

#### (99 S. E. 755.)

1. MASTER AND SERVANT—INJURY TO SERVANT—ASSUMPTION OF RISK.— Under Const., art. IX, sec. 15, assumption of risk is not a defense applicable to a cause arising under the intrastate commerce laws.

2. EVIDENCE—JUDICIAL NOTICE.—It is a matter of general knowledge that rails of a railroad track are affected by the impact of the cars and undergo a chemical change, known as crystallization, and the same principles will apply to a hammer and chisel used to cut steel rails; the impact of the hammer on the chisel corresponding to impact of the train on the rails.

3. MASTER AND SERVANT—INJURY TO SERVANT—DEFECTIVE CHISEL—JURY QUESTION.—Where a chisel furnished to a railroad employee for cutting rails had been used so that the head was battered down and had jagged edges and a splinter flew off and hit him in the eye, the defective character of the chisel made out a *prima facie* case of negligence against the railroad sufficient to take the case to the jury.

Before WHALEY, County Judge, Richland, —— term, ——. Reversed.

Action by Calvin Johnson against the Atlantic Coast Line Railway Company. Judgment for defendant, and plaintiff appeals.

*Mr. Buford Jackson,* for appellant, submits: *The proximate cause of an injury is for the jury:* 68 S. C. 55; 106 S. C. 220. *No difference is made between large or small tools or appliances:* State Const. 1895, article IX, sec. 15; S. C. Stats. of 1916, p. 970; Fed. Stats. 1908. *The master is liable for any injury caused proximately by a defective tool or appliance, and proximate cause of an injury is for the jury:* 109 S. C. 125; 95 S. E. 343; 107 S. C. 523. *The sufficiency of the evidence was a question for the jury:* 111 S. C. —; 96 S. E. 537; 108 S. C. 221; 94 S. E. 302. *As to inspection:* 68 S. E. 525; 106 S. C. 207. *The case should have been submitted to the jury whether plaintiff was engaged in interstate or intrastate commerce:* 106 S. C. 219. *The question of assumption of risks should have been sub-*

*mitted to the jury:* 78 S. E. 890; 91 S. E. 979.   It is the *employer's nondelegable duty to furnish reasonably suitable and safe place to work, and reasonably safe and suitable machinery and appliances, and keep them in repair:* 93 S. E. 395.   *To defeat a recovery on the ground of assumption of risks the defect must not only be plain, open and obvious, but must also be such that an ordinarily prudent and cautious man under the circumstances would observe it, and appreciate the probable danger to his safety in using it.*

*Messrs. Barron, McKay, Frierson & Moffatt* and *Lucian W. McLemore,* for respondent.   *Mr. P. A. Willcox,* of Counsel.   *Mr. McLemore* submits: *That the case falls clearly within the rule as to simple tools, and there can be no recovery:* 18 R. C. L., p. 573; Elliott on Railroads (2d Ed.), sec. 1278a; Labatt, Master and Servant, sec. 154; 26 Cyc. 1138; 128 N. C. 264; 38 S. E. 876; 83 Am. St. 671; 83 Ga. 70; 9 S. E. 1049; 20 Am. St. Rep. 308; 154 N. C. 399; 70 S. E. 742; Ann. Cas. 1912a, 1002, and note; 2 N. C. C. A. 118; 44 Mont. 36; 118 Pac. 764; 2 N. C. C. A. 101, and note; (Me.) 77 Atl. 636; 30 L. R. A. (N. S.) 800, and note; (Neb.) 112 N. W. 318; 13 L. R. A. (N. S.) 668, and note; (S. C.) 98 S. E. 134.   *In the case of simple or common tools no duty of inspection devolves upon the employer if the tools are reasonably safe when furnished;* 18 R. C. L., p. 653; 57 Ark. 503; 22 S. W. 161; 68 Ga. 699; 128 Ga. 667; 55 S. E. 939; 28 Ky. L. Rep. 1168; 91 S. W. 255; 45 Minn. 471; 48 N. W. 1, 576; 10 N. Y. S. R. 326; 62 Tex. 627; (N. Y.) 67 Atl. 28; 38 Mont. 99; 99 Pac. 131.   *The maxim res ipsa loquitur does not apply to a case of this kind:* 69 S. C. 529; 48 S. E. 538; 72 S. C. 401; 52 S. E. 45; 87 S. C. 190; 105 S. C. 509; 90 S. E. 158; 67 S. C. 290; 75 S. C. 102; 86 S. C. 352.   *The constitutional provisions (Const. 1895, art. IX, sec. 15) have no application to this case, neither has the act of 1916 (29 Stat. 970).*

June 23, 1919.

The opinion of the Court was delivered by Mr. Chief Justice Gary.

This is an action for damages, arising from the alleged negligence of the defendant, causing the loss of plaintiff's eye.

The allegations of the complaint are as follows:

"That on May 28, 1917, the plaintiff was in the employ of the defendant, engaged in repairing a track for the defendant at defendant's passenger depot, at Sumter, under Foreman Henry De Berry, and the defendant, its officers, agents, and servants, negligently and recklessly furnished this plaintiff a very worn, defective, and unsafe cold-chisel and hammer, and negligently and recklessly put this plaintiff to cutting a rail in two with said defective, unsafe, and worn appliance; the hammer and chisel both being battered and worn and unsafe. On account of said negligence and recklessness, a flake or piece of said cold-chisel put out this plaintiff's left eye and has injured him and damaged him, in the sum of $3,000."

The defendant denied the allegations of the complaint, and alleged that the plaintiff was engaged in interstate commerce at the time of the injury. It also set up the defense of assumption of risk.

The plaintiff testified as follows:

"On May 28, 1917, our crew was repairing the track at the north end of the Sumter yard, at Sumter, S. C., for the Atlantic Coast Line Railroad Company. Our foreman was Henry De Berry. I had been working for him five or six years. We were doing repair work on the track, and nothing else. Our foreman, Henry De Berry, put me, Calvin Johnson, and another man to cutting a rail in two with a hammer and cold-chisel. He sent me to get the chisel. He told me to take a man and cut the rail in two. I was holding the chisel on the rail, and Willie Weathers was driving it with a hammer; we were cutting the rail in two. The ham-

mer was in good condition, but the chisel was battered considerably on the head and had jagged edges. After Willie Weathers had struck the chisel a few licks, a piece of steel from the chisel flew off and hit me in the eye and put it out.

"The tools were kept in a toolhouse, and the foreman saw them every morning and evening. We must have had two or three cold-chisels. Three or four were out there. That was the best one. The tools were kept in a toolhouse. Tools of all kinds were kept there."

At the close of the plaintiff's testimony, the defendant's attorney made a motion for a nonsuit, on the grounds that there was no evidence of negligence or wilfulness; and that "This case falls under the simple tool doctrine which holds there is no duty on the master to inspect, and simply the duty to exercise ordinary care to furnish safe tools, and there is no duty under that doctrine as is the case with more complicated tools, but, having discharged the primary duty of furnishing safe tools, there is no further duty. The employee has a better opportunity to know the condition of the tools."

The motion was granted, and the plaintiff appealed upon numerous exceptions, which it will not be necessary to consider in detail.

The practical question is whether there was any testimony tending to show negligence on the part of the defendant. It is conceded by the respondent's attorney that this is the sole issue.

Therefore, we shall not discuss the question whether the plaintiff was engaged in interstate commerce at the time of the injury, nor the defense of assumption of risk, as section 15, art. IX, of the Constitution, shows that such defense is not applicable to a case arising under the intrastate commerce laws.

The cutting of the rail by the use of the chisel and hammer was, in itself, a dangerous operation. A chisel that has

been hammered until it has spread at the top, and its edges have become jagged, is materially different from one that has not undergone such a change. Under the impact of a hammer, the jagged edges of a chisel are more apt to fly off than from one in a normal condition and having no such edges. Blows from a heavy hammer upon a chisel will produce a shock that will cause the atoms of the entire chisel to become less cohesive, and as a consequence, it is more apt to break. This chemical change in the condition of the atoms is called crystallization, and is another reason why the jagged edges are rendered more hazardous.

It is a matter of general knowledge that the rails of a track over which trains of cars run are affected by the impact of the cars, and undergo a chemical change, which, after a certain time, renders them dangerous, although it may not appear that the shock has affected them. For this reason, the rails are replaced after a certain length of time, in order to prevent accidents. This principle applies to a hammer and chisel.

When the chisel spreads and the edges become jagged, it is the duty of the master to repair it.

The respondent's attorney relies upon the case of *Richardson v. Fertilizer Co.*, 98 S. E. 134. In that case the action was for damages, resulting, from a defective paint brush, in the loss of the plaintiff's eye. The Court said:

"There was no reason for the defendant to warn him that paint might splash into his eyes. Defendant had the right to assume that a man of ordinary intelligence and full age, and with experience as a workman, would know the condition of the paint brush and the risk of using it, and, by having selected the brush and used it, with full knowledge of its condition, he assumed the risk attendant on its use. The paint brush was an instrumentality of simple character, different in character with complicated machinery, and the duties of the master in regard thereto are not so strict. The plainiff, by the exercise of ordinary care and intelligence on

making his selection of the paint brush and voluntarily using the same with such knowledge, assumed the risk of the use of the brush, and should not be allowed to recover."

The facts of that case are quite different from the one now under consideration. The paint brush was an instrumentality of simple character, and its use not ordinarily attended with danger.

In that case the Court also held that the plaintiff assumed the risk, and, therefore, could not recover. In the present case, the chisel and hammer, when used in conjunction, made the operation dangerous; and, further, the defense of assumption of risk is not now involved in this case.

We have shown that the chisel was defective. This made a *prima facie* case against the defendant, and rendered necessary the submission of the issue of negligence to the jury. *Branch v. Ry.,* 35 S. C. 405, 14 S. E. 808.

Judgment reversed, and case remanded for a new trial.

MESSRS. JUSTICES WATTS and GAGE concur.

MR. JUSTICE HYDRICK dissents.

MR. JUSTICE FRASER. I dissent. The defendant is an interstate railroad, and the plaintiff was repairing the track, and, therefore, the doctrine of assumption of risk applies.

If the Court can take judicial notice of the dangerous condition of the cold-chisel, then the plaintiff, a practical railroad man, should also be charged with notice. The two are inseparable.