10606.

JOHNSON v. ATLANTIC COAST LINE R. R. CO.

(107 S. E. 31)

1.  APPEAL AND ERROR—FORMER DECISION THE LAW OF THE CASE WHEN
    FACTS PRACTICALLY THE SAME.—When the facts on a second ap-
    peal are practically the same as on the former appeal, the former
    decision that the issue of negligence should have been sent to the
    jury is the law of the case.

2.  COMMERCE—EMPLOYEE CUTTING RAIL IN REPAIRING TRACK USED
    BY INTERSTATE TRAINS IS EMPLOYED IN INTERSTATE COMMERCE.—A
    railroad employee, injured while cutting a rail in the course of
    repairing a track used by interstate, as well as other trains, was
    engaged in interstate commerce.

3.  MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE AND ASSUMP-
    TION OF RISK FOR JURY.—In an action for injuries sustained by a
    railway employee engaged in interstate commerce, where more
    than one inference can be drawn on the questions of contributory
    negligence and assumption of risk, they should be submitted to
    the jury.

Before WHALEY, J., County Court, Richland. Reversed.

Action by Calvin Johnson against Atlantic Coast Line
Railroad Company.    From directed verdict for defendant
the plaintiff appeals.    For former appeal see 112 S. C. 47;
99 S. E. 755.

Plaintiff was injured while cutting a rail in repairing a
track used by interstate and other trains.

The reasons given by the trial Judge for directing a
verdict, mentioned in the dissenting opinion, were as follows.

The Court:   Well, gentlemen, I think I had better bring
this to an end.    The more I hear from both sides, the
more convinced I am.   As I said, the only thing that was
worrying me was the assumption of risk, which was not
passed on by the Supreme Court in this majority opinion
at all because it did not apply to the case at all as it went up.
Now, either there was no defect in this tool at all—if
you want to take all of the defendant's testimony, of course,

either there was no defect of it at all and that would come in on the issue of negligence and would go to the jury on that or if it was, or if there were a defect in it which would make it dangerous, as the Supreme Court has well said, that danger would not be latent, as I understand the word "latent," that danger to be latent would be hidden, that would not be hidden because it came from that mushroom effect, as the witnesses have said, the mashing down of the top of that cold-chisel and the projections that come on the side and are sometimes knocked off.

So then, there was either no danger at all, or there was a danger which was a danger that would have been as much apparent to the man using the tool as the master himself. And that certainly carries me, as I understand it, from the negligence proposition over to the assumption of risk, which under the Federal Employers' Liability Act is a complete defense.

It is significant that he was told to carry that tool back. That is his own testimony from his own side, not his own personally but from his own side. It is significant that he himself testified that that tool had very jagged edges. And he placed his whole case upon the fact that it did have jagged edges and was therefore dangerous and a piece flew off and hit him.

Now, there was a discussion between him and the man who was helping him at that job.

And I cannot for one moment think that with all the facts that are before me here that what Judge Frazier said in his dissenting opinion would be the majority opinion of the Supreme Court, if not the majority opinion, that all of the facts as presented in this case before, that the two things are inseparable.

If it was dangerous it was apparent right there, and if he used it for an hour, if he had it in his own possesion for an hour and he had had some experience along this line or

if he used it for two hours, as the other witnesses testified to, and I give him the benefit of his testimony, of the truth of his testimony on this, if he had only used it long enough to go around one side and hardly around the other with that heavy hammering on that cold chisel with that mushroom effect that he said was there, which I take to be true in deciding this case now, what he said about it was true why, then, it was a danger that was as apparent to him as to the master, and even though the master may have let him negligently get it, after he kept on using it it was in his possession and if it became more "mushroomed" while he was using it right there, he was in a better position to report it rather than to go on, but he didn't, he went on, and by going on he assumed the risk, and I do not see how he can now complain.    He is not at all a fool.    As said  in *Martin vs. Royster* Case, and I believe that would apply here, he is not one of meager understanding.   I think he could have reasonably appreciated the risk according to his own testimony as to the conditions of that tool.

Mr. Jackson: Excuse me, please, has your Honor finished?

The Court: Yes, sir.

Mr. Jackson: Well, does the Court mean to rule now that according to the testimony here that this defect was so plain, open, and obvious that this man observed the danger and appreciated the danger?

The Court: Yes, sir.

Mr. Jackson: Yes, sir.

The Court: And if he didn't he ought to have, as he is not one of meager understanding.   I think what was said in the Royster case in that regard applies here.

Now, gentlemen, I may be ruling right, or I may be ruling wrong; but attorneys must not be making remarks in Court. I try to do my best.

Mr. McKay: Your Honor will direct the foreman of the. jury to sign the verdict?

The Court:    Yes, bring them back.

(Jury was brought back.)

The Court: Mr. Foreman and gentlemen, I have decided in this case even though the master did furnish at the beginning a defective tool, negligently, so that this man was of sufficient understanding to appreciate the condition of that tool, and went ahead and worked with it, and under the law whenever an employee does that and does not report the defect, why, he then assumes whatever risk there may afterwards be from that apparent danger and cannot recover if he gets hurt from that; that is one of the chances that he undertakes; he is paid for that in his wages when he undertakes that kind of employment.    So I have had to direct a verdict for the defendant, and I will just get you to step up here, Mr. Foreman, to this desk and sign it.

*Messrs. Buford Jackson and W. N. Graydon,* for appellant, cite: *Assumption of risk is an affirmative defense and unless evidence is conclusive question is for the jury*: 107 S. C. 523; 107 S. C. 96; 91 S. E. 978; 78 S. E. 890; 102 S. C. 276; 243 U. S. 572; 235 U. S. 389; 240 U. S. 464; 242 U. S. 169; 94 S. E. 302; 96 S. E. 537.    *Question of whether or not plaintiff was engaged in interstate or intrastate commerce is a question for the jury*: 106 S. C. 219; 101 S. C. 108; 99 S. C. 417; 109 S. C. 384; 109 S. C. 406.    *Rule as to safe place and safe and suitable tools*: 93 S. C.  395; 68 S. E. 525; 106 S. C. 209.

*Messrs. L. W. McLemore and Barron, McKay, Frierson & McCants,* for respondent, cite: *On second trial question on which no testimony .had been introduced at first trial is not res adjudicata*: 77 S. C. 328; 84 S. C. 364. *Working on rails used daily for interstate trains, plaintiff was "engaged in interstate commerce"*: 229 U. S. 146, 57 L. Ed. 1125; 223 U. S. 1, 56 L. Ed. 327; 229 U. S. 114, 57

L. Ed. 1096; 229 U. S. 156, 57 L. Ed 1129; 232 U. S. 248, 58 L. Ed. 591; 238 U. S. 260, 59 L. Ed. 1298; 244 U. S. 571, 61 L. Ed. 1321: *Under Federal Employers' Liability Act, assumption of risk is available*: 233 U S. 492, 58 L. Ed. 1062; 241 U. S. 229, 60 L. Ed. 970. *Obvious risks*: 245 U. S. 441, 62 L. Ed. 385

April 13, 1921.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This is an appeal from a directed verdict in favor of defendant-respondent by County Judge Whaley.

This is the second appeal in the case (112 S. C. 47, 99 S. E. 755.) The exceptions, eight in number, complain of error on the part of his Honor in so deciding. Appellant says, also, that plaintiff withdrew any claim for punitive damages. In the former decision this Court decided that "the issue of negligence should have been sent to the jury." As the facts at this time are practically the same as on the former appeal, that as to negligence becomes the law of the case. The evidence in the case shows that the instrument furnished was frazzled, and plaintiff might have had the right to assume that the instrument furnished was in normal condition.

The exceptions raise two questions, that his Honor was in error in holding that the plaintiff was negligent, and assumed the risk.

The only inference that can be inferred from the evidence is that the plaintiff was engaged in interstate commerce. But both the questions of negligence and assumption of risk should have been submitted to the jury, as more than one inference could have been drawn. The exceptions are sustained, and judgment reversed.

than one inference could have been drawn.    The exceptions are sustained, and judgment reversed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE FRASER concur.

MR. JUSTICE COTHRAN (dissenting in part):    I think that the direction of the verdict for the defendant should be sustained for the very satisfactory reasons given by the presiding Judge.

I agree with the leading opinion that as the facts upon this trial are practically the same as upon the former trial, the judgment of this Court on appeal from the nonsuit in that trial is conclusive upon the issue of negligence on the part of the defendant; that is, that there was sufficient evidence of such negligence to require the submission of that issue to the jury.    But in the former appeal, the Court specifically and distinctly states that the questions as to interstate commerce, employment, and assumption of risk were not involved, and were not therefore considered.    It is evident that the appeal was decided upon the theory that the employment was intrastate, and subject to the elimination of the defense of assumption of risk under the Constitution of this State, Article 9 § 15.    (I am not to be understood as indorsing the proposition that the Constitution eliminates in railroad cases all assumption of risk, being of the opinion that it eliminates only that assumption of risk which previously was inferred from the use of defective or unsafe machinery, etc., with knowledge of that character or condition; and that the doctrine so far as the ordinary risks of the employment are concerned is unaffected.)    An entirely different aspect of the case is presented when it appears, as it does upon the second trial, that the employment was interstate in its character, and subject to the federal statute which does not eliminate assumption of risk.

The facts from the plaintiff's standpoint alone make out as unquestionable a case of assumption of risk as in my

opinion could possibly be conceived; it is impossible to draw any other reasonable inference from them.

The plaintiff was directed to assist in cutting a steel rail in two.    This was to be done with a chisel and hammer. The plaintiff was expected to hold and direct the chisel while another laborer used the hammer.    The foreman sent the plaintiff to the tool-house to get a chisel where three or four were kept.    They were all more or less "mush- roomed" at the striking end.    The plaintiff after an examination of them selected the one which he testified "was the best one."    He did not see it at all after the accident, but testified:

"I looked at the chisel that morning before we started using it and noticed the battered edges."

The colaborer who was using the hammer also noticed the battered head of the chisel, called the plaintiff's attention to it, and advised him to get another one.

Assuming, as I am perhaps bound by the former descision in this case to assume, that the chisel was defective for the lack of repair, which as a prima facie showing would have carried the case to the jury upon the issue of the defendant's negligence, I think that the testimony for the plaintiff presented the elements of assumption of risk which should justify the action of the Circuit Judge in directing the verdict for the defendant.

These elements are:    (1) Knowledge of the defect, actual or presumed, from the exercise of ordinary care; (2) appreciation of the danger reasonably incident to the use of the instrumentality in its defective condition.

That the plaintiff had actual knowledge of the defctive condition of the chisel appears conclusively from his own statement.    The selection by him of this particular chisel from the lot of others as "the best one," denotes an examination of all of them, and a knowledge from that inspection and comparison of its condition.    He specifically admits, moreover, that he looked at the chisel that morning, and

"noticed the battered edges;" that he did not see it at all after the accident.

That he appreciated the danger in the use of the defective chisel must be assumed from his long experience with such instrumentalities, and the express warning given by his colaborer. The condition of the chisel was directly under his eye, and as Mr. Justice Fraser says in his dissenting opinion upon the former appeal:

"If the Court can take judicial notice of the dangerous condition of the cold-chisel, then the plaintiff, a practical railroad man, should also be charged with notice."

I cannot distinguish this case from the federal cases of *Ry. Co. v. Horton,* 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed 1062, L. R. A. 1915 C, 1 Ann. Cas. 1915 B, 475; *Jacobs vs. Ry. Co.,* 241 U. S. 229, 36 Sup. Ct. 588, 60 L. Ed. 970; *Ry. Co. vs. Hall,* 232 U. S. 94, 34 Sup. Ct. 229, 58 L. Ed. 521; *Boldt v. Ry. Co.,* 245 U. S. 441, 38 Sup. Ct. 139, 62 L. Ed. 385, or from our own cases of *James v. Fountain Inn Mfg. Co.,* 80 S. C. 232, 61 S. E. 391; *Lewis v. Building Co.,* 87 S. C. 210, 69 S. E. 212; *Bodie v. R. Co.,* 61 S. C. 468, 39 S. E. 715.

Upon the issue of the defendant's negligence, this now being a case under the federal acts, I am not at all sure that the rule laid down in *Branch v. R. Co.,* 35 S. C. 405, 14 S. E. 808, as to the presumption of negligence from proof of a defective instrumentality, obtains. *Ry. Co. v. Harris,* 247 U. S. 367, 38 Sup. Ct. 535, 62 L. Ed. 1167.