7707

### LEWIS v. GALLIVAN BUILDING CO.

1. MASTER AND SERVANT.—Unless the increase of the danger due to taking off the appliances, attachments· necessary to its safe operation, was so obvious that a laborer of ordinary intelligence could not fail to see and appreciate it, the right to rely on the master's obligation to furnish reasonably safe appliances is not lost.

2. IBID.—ISSUES.—Whether a common laborer assumed the risk with knowledge of a defect in the appliances to carry men and material across the river, or that he had the right to rely on the superior knowledge of the master as to the safety of the appliances after being warned, is for the jury.

·3. IBID.—ASSUMPTION OF RISKS.—A servant assumes the ordinary risks of his employment but not that arising· from the negligence of the master, except, perhaps, where the defects in appliances or the unsafeness of the place of work or incapacity of servants supplied by the master, is evident; but this limitation does not always defeat the servant's right of action as waiver of master's negligence or assumption of risks ·may be negatived.

4. IBID.—IBID.—CHARGE.—The better practice in such cases is for the trial Judge to charge the general .doctrine of assumption of risks and those which the servant may assume by continuing in the service in the face of evident defects. But it is not reversible error to omit these qualifications and limitations when not requested to give them.

, Before ALDRICH, J., Greenville, March Term, 1910. Affirmed.

Action by Damie Lewis, administratrix of Oscar Lewis, against Gallivan Building Company. From judgment for plaintiff, defendant appeals.

*Mr. Wm. G. Sirrine* for appellant, cites: *As to assumption of risks:* 80 S. C. 232; 61 S. C. 468; 55 S. C. 101; 53 S. C. 358; 74 S. C. 16; 72 S. C. 346; 75 S. C. 390; 81 S. C. 377; 21 S. C. 54; 27 S. C. 71; 55 S. C. 483.

*Messrs. Haynsworth & Haynsworth* and *Padgett & Watkins* contra. Oral argument.

November 4, 1910. The opinion of the Court was delivered by

Mr. Justice Woods. The defendant Gallivan Building Company, in 1906, was constructing a dam across the Savannah River at Gregg Shoals. For the purpose of conveying its workmen and material along the dam, the defendant had stretched a large cable over the river at a height of about sixty-five feet. By means of a small cable working on a drum attached to a stationary engine, the person or thing to be moved was pulled along the large cable over the proper place, and was then lowered by means of another cable called the main fall. Oscar Lewis, plaintiff's intestate, a laborer employed by the defendant in the construction of its dam, was ordered on October 24th, 1906, to go across the river to do some work required by the superintendent. He undertook the passage on the cable, but when he was about half way across there was a sudden slack in the cable in consequence of which he was precipitated into the river and drowned. For his loss the plaintiff, his mother, as his administratrix, brings this action alleging her son's death to have been caused by the negligence of the defendant (1), in not having a competent engineer to manage the engine which controlled the cable, and (2), in not having carriers on the cable, and in not having a weight block on the carriage, for the lack of which the main fall had at the time run slack on the Georgia side of the river and had gotten down under the water. The allegation is that when plaintiff's intestate was immediately over the water of the main channel, the main fall slack pulled out of the water and ran quickly through the shieve on the carriage block, letting the deceased drop into the river and drown.

The defendant appeals from a judgment in favor of the plaintiff, assigning as the first error the refusal of the Circuit Court to order a nonsuit or direct a verdict for the defendant.

There was certainly evidence of negligence on the part of the defendant in failing to guard against the sudden slack in the cable which precipitated Lewis into the river. There was no denial that the cable had been provided with carriers to prevent this sudden slack and that they had been taken off. There was testimony that these carriers were not of the right construction and were taken off because they tended to wear away the cable; but there was no evidence that the defendant had made any effort to make the cable safe with other carriers. There was also a weight block which had been attached to the main fall block to supply the place of the carriers, but it appeared that this also had been taken off. In addition to this the defendant had allowed the cable called the main fall to drop into the river and had become caught under a rock in such a way that its sudden release from the rock would inevitably cause anyone crossing the river on the cable to fall.

The main contention of defendant's counsel on this point, however, is that even if negligence of the defendant be admitted, yet the jury should have been directed to find for the defendant, because with full knowledge of the defective appliances and the danger, Lewis assumed the risk. Unless the increase of the danger due to taking off the carriers and the weight block was so obvious that a laborer of ordinary intelligence could not fail to see and appreciate it, the right to rely on the master's obligation to furnish reasonably safe appliances was not lost. *Wofford* v. *Clinton Cotton Mills,* 72 S. C. 346, 51 S. E. 918. That the increased danger was so obvious is not an inference necessarily drawn from the evidence in this case. Lewis was an ordinary negro laborer and there was nothing to show that he had any knowledge of the appliances requisite for the work other than what he might have acquired by their use. He knew that the defendant had taken off the carriers and the weight block, but knowledge is not to be imputed to him that these appliances were necessary to his safety.

It could not be declared by the Court unreasonable for the laborer to rely on the superior intelligence of the defendant's superintendent and conclude that these appliances were unnecessary to the safe use of the cable. So also in view of the higher intelligence of the master it was for the jury and not the Court to decide whether the laborer had a right to believe that his superior would not have ordered him across unless he had reason to believe that the cable called the main fall was securely caught under the rock.

It is true there was evidence that Lewis was warned of the danger while he was going across and that he nevertheless signalled the engineer to go forward; but the evidence to the contrary clearly made an issue for the jury on this point.

The other assignment of error relates to the following instruction in the charge: "While a servant assumes the ordinary risks of the employment, the master also assumes to exercise due care, and if the deceased was injured, then that defense of assumption of risk does not arise when the master himself has been negligent and guilty of the want of due care." The general rule is that laid down by the Circuit Court, namely, that a servant assumes the risk ordinarily incident to his employment, but not those risks which are due to the negligence of the master. This general rule was approved in *Morrow* v. *Gaffney Mfg. Co.,* 70 S. C. 250, 49 S. E. 573, and in *Green* v. *Southern Ry.,* 72 S. C. 398, 52 S. E. 45. It is true that the servant may in some conditions defeat his action when the defects in appliances or the unsafeness of the place of work or the incapacity of servants supplied by the master is evident. *Bodie* v. *Charleston etc. Ry.,* 61 S. C. 468, 39 S. E. 715; *James* v. *Fountain Inn Mfg. Co.,* 80 S. C. 232, 61 S. E. 391. But it cannot be laid down as a rule without qualification that under all circumstances the servant's action would be defeated by continuance of the work after the master's negligence has become evident; for waiver of the

master's negligence and assumption of the risk incident to it may be negatived by proof that the service was continued in order to meet an extraordinary emergency, or in reliance on the master's assurance of safety, or under the coercion of legal penalties. *Wofford* v. *Clinton Cotton Mills,* 72 S. C. 348, 51 S. E. 918; *Hall* v. *Northwestern Ry. Co.,* 81 S. C. 522, 62 S. E. 848.

In a proper case it is no doubt better for the presiding Judge in charging on assumption of risk to give the general definition of the assumption by the servant of the risks ordinarily incident to his employment, but not of those due to the negligence of the master—and state in addition the doctrine above indicated as to the unusual risks which the servant may assume by continuing in the service of the master in the face of evident defects in appliances or evident unsafety of the place of work or evident incapacity of servants. But it is not reversible error that the charge states the general definition and rule without its qualifications and limitations, when no request is made that such qualifications and limitations should be stated. We think this is the most convenient rule of practice. At all events it is the rule distinctly laid down in the case of *Morrow* v. *Gaffney Mfg. Co., supra,* which must be regarded a controlling authority on the subject.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.