RICHARD LANE BROWN, III (UNMARRIED) AND CHARLES PALMER BROWN (UNMARRIED), PETITIONERS v. ROBERT MARTIN BOGER AND WIFE, EVELYN BOGER; NANCY GROVES BOGER FORTE AND HUSBAND, KENNETH EUGENE FORTE; AND CABARRUS BANK & TRUST COMPANY AND M. A. BOGER, TRUSTEES UNDER THE WILL OF IDA GROVES BOGER, DEFENDANTS.

(Filed 15 January, 1965.)

**1. Partition § 6—**

Whether land should be *actually* partitioned *or* sold for partition is a question of fact for decision of the clerk, subject to review by the judge, and is not an issue of fact for a jury.

**2. Same—**

The mere fact that actual partition would entail more time and expense than a sale for partition is, without more, insufficient basis to deny a tenant in common his right to have partition in kind.

**3. Same—**

A tenant in common is entitled to actual partition unless actual partition will cause substantial and material injury to some or all of the cotenants, and an "injury" which will justify an order of sale is such a substantial injustice or material impairment as would render it unconscionable to require the cotenants to submit to actual partition, G.S. 46-22, and each case must be determined on its own facts.

**4. Same—**

The court must find the essential facts to support its order of sale for partition, and while the court's findings are conclusive if supported by competent evidence and its discretionary determination will not be disturbed in the absence of some error of law, if the court's findings are insufficient to support its conclussion that actual partition cannot be had without material injury to some or all of the cotenants, its order of sale must be vacated and the cause remanded for further proceedings.

**5. Same—**

A finding that timber was offered for sale from the tract in question in separate parcels and then as a whole, and brought a higher price as a whole than in separate parcels, is irrelevant to the question of whether a tenant in common is entitled to sale for partition, since the advantages of cutting and removing timber from an entire tract are dissimilar to the advantages of selling the fee in a tract of land as a whole or in parts.

**6. Evidence § 35—**

Nonexpert opinion is not competent when the jury is as well qualified as the witness to draw inferences and conclusions from the facts which the witness may relate, and therefore testimony of a witness that a tract would bring a better price if sold as a whole than if sold in smaller tracts is incompetent.

**7. Evidence § 41;    Partition § 6—**

In proceedings to have land sold for partition a witness may not testify that the property could not be divided without injury to some or all of the tenants in common, since this is the ultimate question for decision by the court after findings of fact by the court sufficient to support the conclusion. Whether the court can accept as "satisfactory proof" of such injury evidence patently incompetent but not objected to, *quaere?*

**8. Partition § 6—**

The fact that it would be more convenient and easy to sell for partition than to actually partition the land because of its varying character, is not ground for denying actual partition.

**9. Same—**

The court's findings to the effect that it was to the best interest of the tenants in common that the land be sold as a whole and that a lower price would be received from a sale of the tract in those parcels which could be allotted in an actual partition, without a finding as to how much less the land would bring if sold in parcels, *held* insufficient to support the court's conclusion that an actual partition could not be had without injury to some or all of the parties interested.

APPEAL by defendants from *McConnell, J.,* October 1963 Civil Session of STANLY.

This is a special proceeding for the sale of land for partition. The *locus in quo* consists of about 1250 acres in one tract. Plaintiffs, Richard

Lane Brown, III and Charles Palmer Brown, own seven-tenths un-divided interest in fee; defendants Robert Martin Boger and Nancy Grover Boger Forte own three-tenths undivided interest in fee.

Plaintiffs allege that "the nature and size of said lands is such that an actual partition thereof cannot be made without injury to the sev-eral persons interested therein; that in the opinion of your petitioners *(sic)* a large (larger) amount can be realized from the sale of said lands as a whole rather than by selling the same in separate tracts." Defendants, on the other hand, aver that the land "can be divided among the tenants in common without injury to any of them," and defendants own a three-tenths undivided interest in an adjoining tract of 57.4 acres.

There is no serious conflict in the evidence with respect to the ma-terial facts, but witnesses for plaintiffs and defendants draw conflicting conclusions from the facts.

The land is situate in Stanly County, 6 miles from Albemarle, 6 miles from Badin, 30 miles from Concord and 48 miles from Charlotte. The boundaries are irregular; the shape, as nearly as it can be de-scribed, is somewhat oval with projecting corners all around; the north-south axis is somewhat longer than the east-west axis. It is bounded on the north and northeast by Mountain Creek which is the boun-dary, for a distance of about 2000 feet, between this land and Morrow Mountain State Park. Mountain Creek flows into a lake formed by Carolina Power and Light Company's dam across the Pee Dee River. The lake backs water into Mountain Creek. The *locus in quo* is about 1000 yards from the lake proper, and at one point is about 300 yards from the Raleigh-Charlotte highway. There is an unpaved public road running east and west through the property; it dead-ends just to the east of the property at Clodfelter Section where there are 12 or 15 homes. School buses use the road to transport children from Clodfelter Section to and from school. An electric power line crosses the property making electricity available.

The land in question is known as the Groves Property (named for a former owner, and ancestor of defendants). It is a composite of 8 tracts, all of which were acquired by Groves: Maner tract, 252 acres, is the northwest portion; Bolich tract, 301.25 acres, the northeast por-tion; Wade tract, 301.4 acres, east-central and southeast; Hamilton tract, 50.2 acres, south; Texas tract, 244.8 acres, southwest; Marks tract, 102.5 acres, Thompson tract, 47.2 acres, and Kirk tract, 19.9 acres, west. There are 50 to 60 acres of open cultivated land on the Maner tract; there was formerly a large acreage under cultivation on this tract and tenants formerly lived there and made a living farming

it; it is fairly level and was productive. The Bolich tract was at one time "a good size farm." Stony Mountain is on the Wade tract; it is rough and rocky. Mr. Hamilton lived on the Hamilton tract and did some farming on a small acreage, his main occupation was carpenter. Tenant farmers have lived on the Texas tract and made their living there; 11 bales of cotton, 400 bushels of corn and other crops were made one year; it was good land for cotton, that's the reason it was called "Texas." At one time a family lived on the Marks tract and farmed it and made a living there. A family farmed the Thompson tract at one time. Six acres of the Kirk tract was at one time under cultivation; this tract could be used for any purpose.

All of the farm land, except the 50 or 60 acres on the Maner tract, was allowed to grow up many years ago. The timber on the Groves property was cut and removed in 1950 and 1951. It was offered in tracts, but brought more as a whole. It sold for $155,000. There is no "saw" timber on the land now, except oak, and oak has very little value. There is a young growth of pine on part of the land. After the pine timber was cut in 1951 hardwood took over a part of the area formerly in pines because of poor reseeding and because hardwood is more progressive. The land is generally rough, but it has all grades of land which can be found in Stanly County, from the roughest to very good farm land. 200 to 250 acres could be cleared and used for farming and grazing. But some witnesses thought this not feasible. It is woodland and is suitable for recreational purposes, including deer and quail hunting. A part of the property could be developed for residential purposes.

Two tracts of land, containing 44.7 acres and 4.4 acres, owned by persons other than the parties hereto, lie inside the Groves property. The 57.4-acre tract, in which defendants have a three-tenths interest, lies at and projects into the central-western portion of the Groves property. This tract has a residence on it.

In addition to the Morrow Mountain State Park and the Clodfelter section, there are other developed properties adjoining and near the Groves property. About one-half mile away is the River Haven Development in which is located about 42 houses. The Methodist Church is constructing a youth center nearby. There are a number of homes and farms on lands adjoining. A new subdivision nearby, containing 96 lots, is being developed and 4 homes have been built there.

Ida Groves Boger owned a three-tenths undivided interest in the Groves property. She died in 1956 and willed her interest to trustees, in trust for defendants until they attained age 25. Robert Martin Boger is over 25, and is a physician and resides in Atlanta, Georgia. Nancy

Groves Boger Forte is not yet 25, her trustees are Cabarrus Bank and Trust Company and M. A. Boger, Jr., her father. The trustee bank received a number of bids for defendants' interest in the Groves property, and purported to give Malcolm Palmer "a refusal to purchase the property." M. A. Boger, Jr., trustee, did not know this and, when he found out about it, did not approve. Defendants do not wish to sell their interest; they want the property divided and to hold their share. The Groves property "is down next to Morrow Mountain and they aren't making any more land down there."

Plaintiffs acquired their seven-tenths interest in February 1962 from some of the Groves heirs. They attempted to get an option from all of the owners, including defendants. The option price was $50,000, about $40 per acre. Defendants would not sell. A 75-acre tract, located within a mile of the Groves property, having no outlet and as rough on the average as the *locus in quo*, was sold for hunting purposes in 1963 at the price of $100 per acre. The old Kirk place, which adjoins the Groves property, sold at public auction at the price of $65 per acre. Mr. Boone's place, which also adjoins the Groves property and is about the same kind of land, sold for $12,375; it contains about 200 acres. Mr. Furr owns 234 acres adjoining the Groves property; he was offered $75 per acre, but would not sell. One of plaintiffs' witnesses testified that the Groves property is worth $65 per acre.

Twelve witnesses testified for plaintiffs in substance as follows: Groves property would be difficult to divide because it is rough land, is irregular in contour, and contains different types and grades of land. It cannot be equitably divided, without injury to some or all of the tenants in common. W. C. Lowder, Vice-president of a corporation which owns large tracts of lands, stated: "The only way you can divide land is to sell it and divide the money. You can divide money equally. In my opinion that applies to land everywhere, absolutely." The property would bring more as a whole than divided into two tracts. About twelve persons, firms and organizations have contacted a realtor in an effort to purchase the Groves property, they are not interested in buying a part.

Eight witnesses testified for defendants in substance as follows: In their opinion the property could be equitably divided without injury to any of the parties. A number of people have said they would be interested in a part of the land, but are not financially able "to swing the entire deal."

The cause came on for hearing before the clerk of superior court on 3 October 1963. After hearing evidence, the clerk found facts and

ordered that the property be sold as a whole at public sale. Defendants excepted and appealed to superior court.

The judge heard evidence and found facts in pertinent part as follows:

"4. . . . the tract of land . . . consists of approximately 1250 acres and is located about six miles east of Albemarle on a rural road which enters the property on the north side and comes to a dead-end near the south side thereof; that said land is bounded on the north and northeast by Mountain Creek and the property known as Morrow Mountain State Park; that all sawable timber on said tract of land was sold and cut during the years 1950 and 1951, and there is no sawable timber now standing upon the lands with the exception of some scattered hardwood, but small timber is growing on part of the lands; that a large part of said land is mountainous and not accessible by vehicles; that said land, with the exception of two fields containing approximately 60 acres which are open for cultivation, is extremely rough; that at one time, many years ago, there were smaller open fields, but these have grown up and are not now open for cultivation.

"5. . . . when the timber was sold from said land in 1950, said timber was offered for sale in separate parcels and then as a whole, and brought a higher price as a whole than in separate parcels.

"6. . . . the tract of land sought to be sold . . . is not suitable for residential purposes and cannot be used profitably for farming, and the highest and best use for said land is for recreational and conservation purposes.

"7. . . . all of the parties to this action are absentee owners and a sale will not displace any of the parties.

"8. . . . there is nothing in the evidence to show that the respondents are not financially able to bid on the property in order to assure that it brings an adequate price at a public sale thereof.

"9. . . . the following named persons or organizations have indicated an interest in the purchase of said tract of land as a whole: (naming seven). . . . no interest has been indicated by any person, firm or corporation in the purchase of any less than the whole 1250-acre tract.

"10. . . . from an economic standpoint it is in the best interest of the petitioners . . . that the lands be sold as a whole, and an actual partition of said lands will cause financial detriment to those who want to sell, the court being of the opinion and finding as a fact that the pe-

titioners will receive more from the sale of the lands as a whole than they will be able to receive from the sale of that portion of the lands which would be allotted to them in an actual partition. . . .

"11. From the foregoing findings of fact and from a full consideration of all the evidence offered by the petitioners and the defendants, it appears to the court by satisfactory proof that an actual partition of the lands cannot be made without injury to some or all of the parties interested. . . ."

The judge ordered a public sale of the land as a whole, affirmed the order of the clerk and remanded the cause to the clerk for further proceedings in accordance with the order.

Defendants appeal.

*D. D. Smith and Hobart Morton for defendant appellants.*
*Richard L. Brown, Jr. and S. Craig Hopkins for petitioner appellees.*

MOORE, J. Defendants except to and assign as error the findings of fact and conclusions of law set out in numbered paragraphs 6, 7, 9, 10 and 11 of the judgment below. They say and contend that the evidence does not support the findings of fact and the findings of fact do not support the conclusions of law.

For a clear understanding of the problem presented, a brief review of the legal principles involved is essential.

"At common law and in equity as well, in proceedings for partition of land, the cotenants were entitled to partition in kind if they so demanded, regardless of the difficulty or inconvenience of doing so. Only by consent of parties did the courts have power to order a sale of the land and a division of proceeds among the common owners." 40 Am. Jur., Partition, § 83, p. 72. "By original equitable jurisdiction, independent of any statute, if all of the parties *sui juris* were willing, the court had power to decree a sale; and this, even though infants might be among the parties interested. But where one of the parties *sui juris* refused his consent, the court had no option but to proceed with the ordinary mode of partition." 4 Pomeroy's Equity *Jurisprudence*, 5th Ed., § 1390, pp. 1018, 1019. See also 4 Thompson on Real Property, § 1828, p. 308. It seems that courts of equity gradually assumed authority to order sales of land for partition in instances of extreme hardship, without statutory sanction, and in cases where one or more cotenants did not consent. Whether the courts of equity had such authority became a matter of concern to the courts and the General As-

sembly of North Carolina early in the Nineteenth Century. In *Mineral Co. v. Young*, 220 N.C. 287, 17 S.E. 2d 119, we find the following: "Although there is authority for the view that partition by sale of lands could formerly be made under the equitable jurisdiction of the courts, 17 Am. & Eng. Enc. Law, 785; *Wolfe v. Galloway*, 211 N.C. 361, 190 S.E. 213, statutes authorizing such sale have been regarded as innovations upon the common law and in derogation thereof. 2 Tiffany, Real Property (3d Ed., 1939), 325; 17 Am. & Eng. Enc. Law, 785; *Hale v. Thacker*, 12 S.E. (2d), 524 (W. Va.). In this State statutory relief of that sort apparently derives from the statute of 1812, chapter 847, Laws of North Carolina, Potter, Vol. 2, the preamble of which indicates both the origin and nature of the relief as follows: 'Whereas doubts exist as to the power of courts of equity to order a sale of real estate in cases of partition, where an equal and advantageous division cannot be made. *Be it enacted, &c,*' and there follows the grant of the power." The statute of 1812 provides "That it shall and may be lawful for any court of equity in cases of application for a division of real estate, when it shall be suggested and made to appear to the satisfaction of the court, that an actual partition cannot be made without injury to some or all of the parties interested, to order a sale of the property upon such terms as such court shall deem just and reasonable." 2 Potter: Laws of North Carolina, Ch. 847, p. 1239. So, in this jurisdiction prior to 1868, partition between tenants in common was a matter to be determined by a court of equity. *Haddock v. Stocks*, 167 N.C. 70, 83 S.E. 9. In a case in equity, *Windley v. Barrow*, 55 N.C. 66 (1854), it is declared: *"Prima facie,* each party interested in a tract of land, is entitled to an actual partition, and it is incumbent on him who asks for a sale to show, that his interest will be promoted by it, and that no loss will be worked by it to any other party. *Davis v. Davis*, 2 Ire. Eq. 607 (37 N.C. 607)." Further: "In cases of partition, a court of equity does not act merely in a ministerial character, but it administers its relief *ex equo et bono,* according to justice and equity."

Procedures have changed but not substantive principles. Partition of land is by special proceeding. G.S. 46-3; G.S. 46-22. Whether land should be divided in kind or sold for partition is a question of fact for decision of the clerk of superior court, subject to review by the judge on appeal; it is not an issue of fact for a jury. *Ledbetter v. Pinner*, 120 N.C. 455, 27 S.E. 123; *Talley v. Murchison*, 212 N.C. 205, 193 S.E. 148. G.S. 46-22 provides that "Whenever it appears by satisfactory proof that an actual partition of lands cannot be made without injury to some or all of the parties interested, the court shall order a sale of the property described in the petition, or any part thereof." The general

rule (interpreting the statutes) presently applied is: "A tenant in common is entitled, as a matter of right, to a partition of the land to the end that he may have and enjoy his share therein in severalty, unless it is made to appear that an actual partition cannot be had without injury to some or all of the interested parties." *Seawell v. Seawell,* 233 N.C. 735, 65 S.E. 2d 369; *Hyman v. Edwards,* 217 N.C. 342, 7 S.E. 2d 700. There is unanimity of opinion and decision that partition of land in kind is a matter of right. *Mineral Co. v. Young, supra; Barber v. Barber,* 195 N.C. 711, 143 S.E. 469; *Trull v. Rice,* 85 N.C. 327; *Windley v. Barrow, supra.* But this right of actual partition may not be so used as to injure another. *Trull v. Rice, supra.* The burden is upon those alleging the necessity and desirability of a sale to establish the necessary requisites. *Seawell v. Seawell, supra; Wolfe v. Galloway, supra; Windley v. Barrow, supra.* "As between a partition in kind or sale of land for division, the courts and statutes favor a partition in kind, if it can be accomplished equitably and fairly, since this does not disturb the existing form of inheritance or compel a person to sell his property against his will, which, it has been said, should not be done except in cases of imperious necessity. . . . it is no objection to a partition in kind that some of the cotenants prefer a sale to a partition. . . ." 68 C.J.S., Partition, § 125, pp. 186, 187; 4 Pomeroy's Equity *Jurisprudence,* 5th Ed., § 1390, p. 1019; 4 Thompson on Real Property, § 1828, p. 310; *Tuggle v. Davis,* 165 S.W. 2d 844, 143 A.L.R. 1087 (Ky. 1942); *Owings v. Talbott,* 90 S.W. 2d 723 (Ky. 1936).

It is essential to a sale of land for partition that it be established that an actual division in kind cannot be made without *injury to some or all* of the cotenants. G.S. 46-22. By "injury" to a cotenant is meant substantial injustice or material impairment of his rights or position, such that it would be unconscionable to require him to submit to actual partition. 68 C.J.S., Partition, § 127, p. 190. Since partition in kind is favored, such partition will be ordered, even though there may be some slight disadvantages in pursuing such method. *Ibid.,* p. 192. A sale will not be ordered merely for the convenience of one of the cotenants. *Ibid.,* p. 190. The physical difficulty of division is only a circumstance for the consideration of the court. *Mineral Co. v. Young, supra.* On the question of partition or sale the determinative circumstances usually relate to the land itself, and its location, physical condition, quantity, and the like. 68 C.J.S., Partition, § 127, p. 193. "The test of whether a partition in kind would result in *great prejudice* to the cotenant owners is whether the value of the share of each in case of a partition would be *materially less* than the share of each in the money equivalent that could probably be obtained for the whole." (Emphasis added). 4

Thompson on Real Property, § 1828, p. 309. But many considerations, other than monetary, attach to the ownership of land. *Hale v. Thacker,* 12 S.E. 2d 524 (W. Va. 1940). No exact rule is possible of formulation to determine the question whether there should be a partition in kind or a partition by sale. The determination must be made on the facts of the particular case. 68 C.J.S., Partition, § 127, p. 190. There should be a partition in kind unless such partition will cause material and substantial injury to some or all of the parties interested.

The court has no authority to order a sale of land for partition without satisfactory proof of facts showing that an actual partition will cause injury to some or all of the cotenants. *Wolfe v. Galloway, supra.* The essential facts must be found by the court. *Seawell v. Seawell, supra.* The findings of the judge are conclusive and binding if there is any evidence in the record to support them. *West v. West,* 257 N.C. 760, 127 S.E. 2d 531. The judge has reasonable discretion in making the determination, and his decision will not be disturbed in the absence of some error of law. *Tayloe v. Carrow,* 156 N.C. 6, 72 S.E. 76.

In the instant case there is no finding that the 1250 acres of land cannot be divided so that seven-tenths in value could be allotted to plaintiffs and three-tenths in value to defendants. And if such finding had been made, it would not find support in any probative evidence in the record. At most the evidence would justify a finding that an actual division of the land would entail more time and expense than a smaller tract of uniform condition and value — a circumstance to be considered by the court, but which standing alone would be insufficient basis for a partition by sale.

The crucial finding of fact is set out in numbered paragraph 10: "That from an economic standpoint it is in the best interest of the petitioners . . . that the lands be sold as a whole, and an actual partition of said lands will cause financial detriment to those who want to sell, the Court being of the opinion and finding as a fact that the petitioners will receive more from the sale of the lands as a whole than they will be able to receive from the sale of that portion of the lands which would be allotted to them in an actual partition thereof." Based upon this finding the judge concluded "that an actual partition of the lands cannot be made without injury to some or all of the parties interested."

It is extremely doubtful that there is "satisfactory proof" of the matters set out in paragraph 10 of the judgment. Plaintiffs paid at the rate of $40 per acre in 1962 for seven-tenths interest in the Groves property. Plaintiffs' witness Hearne, testifying in October 1963, stated that the property was worth $65 per acre. A 75-acre tract, similar in

character to the subject property and located about a mile therefrom, was sold in 1963 at the price of $100 per acre. A tract adjoining the Groves property sold at public auction for $65 per acre. A 200-acre tract, similar in character to the Groves property and adjoining it, sold for $60 per acre. The owner of a 234-acre tract, which adjoins the subject property, refused an offer of $75 per acre. The court found as a fact that seven persons, organizations and corporations have, since plaintiffs bought shares of the property, indicated an interest in purchasing the property as a whole, but there is no finding and no evidence to support a finding as to what they would be willing to pay. The court also found "that no interest has been indicated by any person, firm or corporation in the purchase of any less than the whole 1250-acre tract of land." This is contrary to uncontradicted evidence in the record. The trustee bank received, without request therefor, a number of bids for defendants' interest in the land and purported to give to a person "a refusal to purchase." A number of persons expressed an interest in part of the subject land, but are not financially able "to swing the entire deal." The court further found as a fact "that when the timber was sold from said lands in 1950, said timber was offered for sale in separate parcels and then as a whole, and brought a higher price as a whole than in separate parcels." This finding is irrelevant. The considerations which would cause a purchaser to buy a large rather than a small tract of timber, to be cut and removed from the land, have no relation to the considerations which would cause one to purchase land on which there is no "sawable" timber of value. The evidence discussed in this paragraph does not support the finding that the *locus in quo* would sell at a better price as a whole than if divided and offered in separate tracts.

A number of plaintiffs' witnesses were permitted, without objection, to express the opinion that the property would bring a better price if sold as a whole than if sold in smaller tracts. The witnesses were not offered as experts and no effort was made to qualify them as such. No factual basis was laid for the opinion. One or more of the witnesses stated that they knew of no person interested in buying less than the whole tract. ". . . opinion is inadmissible whenever the witness can relate the facts so that the jury (here the judge) will have an adequate understanding of them and the jury is as well qualified as the witness to draw inferences and conclusions from the facts." Stansbury: North Carolina Evidence, § 124, pp. 243-4. It is true that "If opinion evidence is admitted without objection it is entitled to consideration by the jury, and must be considered by the judge in a ruling upon a motion to nonsuit." *Ibid.*, p. 284. But it is assumed that when the court is trier of

the facts it will not consider incompetent evidence or be mislead by that which is inconclusive. *Bizzell v. Bizzell,* 247 N.C. 590, 101 S.E. 2d 668. *Quaere:* May a judge, as trier of the facts, accept as "satisfactory proof," of a matter alleged and essential to the determination of the question presented, opinion evidence patently incompetent, though not objected to? Though the answer to this query is not necessary for decision in the case at bar, it would seem that the answer is "no," unless the failure to object be deemed an admission of the truth of the opinion. We note further that witnesses were permitted to state that the property could not be divided without injury to some or all of the cotenants. Thus they were permitted to draw a conclusion upon the facts and the law as to the ultimate question for decision by the court. Such opinions prove nothing. Proof must be presented and facts found by the judge which will, after proper application of legal principles, support such conclusion before even the judge may make such determination.

Even if the findings of fact in paragraph 10 of the judgment are supported by evidence, these findings are insufficient to support the conclusion that an actual partition cannot be made without injury to some or all of the tenants in common. If the land will bring more as a whole, how much more? Will the difference be so material and substantial as to make an actual partition unjust and inequitable? The findings do not answer these questions. There is much more involved here than competitive bidding, how property can be sold to best advantage, or how to assure plaintiffs of the most profit on their investment. It is the policy of the law that land owned in common be divided and that the cotenants hold their shares of the land in severalty and enjoy the possession and fruits thereof, unless an actual partition will work a substantial inequity and injustice.

Extensive research has failed to bring to light a case factually comparable in which a sale for partition was allowed. *Hale v. Thacker, supra,* is factually similar; those desiring a sale contended that the property would sell for a better price as a whole. The court stated: ". . . the record falls far short of a showing which justifies a sale of the land in question. . . . the owner of a share in land which can be conveniently partitioned has the right to be the judge of his own interest, and he has the right to insist upon his common-law right to partition in kind, so long as that right is not exercised in such a way as to unduly prejudice the rights of his co-owners. It is well known that many considerations, other than monetary, attach to the ownership of land, and courts should be, and always have been, slow to take away from owners of real estate their common law right to have the same

set aside to them in kind." See also *Trowbridge v. Donner,* 40 N.W. 2d 655 (Nev. 1950).

The cause is remanded to superior court for a rehearing on the question whether an actual partition can be made without injury to some or all of the parties interested, and for further proceedings in accordance with law.

Error and remanded.