### 18716

Eddie G. MORGAN, Respondent, v. Ben Roper, Hugh O. Busbia and R. W. Best, Partners, doing business under the name of Augusta Sand & Gravel Company, Appellants.

(157 S. E. (2d) 572)

*Messrs. Harris, Chance & McCracken,* of Augusta, Georgia, and *Lybrand, Rich & Cain,* of Aiken, *for Appellants,*

*Frank H. Cormany, Sr., Esq.,* of Aiken, *for Respondent,*

October 25, 1967.

BUSSEY, Justice.

This is a master-servant case wherein the servant, plaintiff-respondent, recovered actual damages for personal injuries in the amount of $2,434.00 against his employer, the appellant Ben Roper, doing business as Augusta Sand & Gravel Company, the action having been dismissed as to the other defendants named in the caption.

The only testimony in the record is that of the plaintiff and the appeal is primarily from orders of the trial court denying defendant's motions for nonsuit, directed verdict, and judgment *non obstante veredicto,* it being contended by the defendant that there was no proof of negligence on the part of the defendant, that plaintiff was barred from recovery under the doctrine of assumption of risk, and that the evidence was not susceptible of any other reasonable inference than that plaintiff's injuries were caused either solely or contributorily by his own negligence or carelessness. It is elementary that in deciding whether

defendant was entitled to judgment on either of the mentioned grounds, the evidence and all the inferences reasonably deducible therefrom have to be viewed in the light most favorable to the plaintiff. We, accordingly, proceed to state the facts as disclosed by the testimony of the plaintiff in the light of the foregoing principles.

The plaintiff, prior to February 25, 1963, was employed by the defendant, and/or his former partners, for a period of approximately seven years, the place of employment being, until the early part of 1963, at a sand and gravel mine in or near Augusta, Georgia, but the mining operations were transferred then to a new pit in Aiken County. Plaintiff's duties consisted of truck driving, operating a front end loader, and other duties incidental to the mining operation, but he had never operated a dragline or had any occasion to become familiar therewith. On the morning of February 25th, after loading two trucks with a front end loader, he was directed by defendant's foreman to take two five gallon cans of gasoline and a funnel and pour the gasoline into the fuel tank of a dragline which was nearby. Pursuant to his orders or instructions, plaintiff climbed up on the back of the dragline and poured one can of gas into the tank without incident, but when he was bringing the second can forward for the purpose of pouring its contents into the tank, the can came in contact with the side of the top of the funnel and the opposite side of the funnel top came in contact with a hot or live wire which sparked and caused the gasoline to explode, rather severely burning and injuring the plaintiff.

It was a cold morning and the dragline had not been in operation that morning. The fuel tank was located under the motor of the dragline. Without the aid of a diagram used in the course of the trial, which is not before us, it is difficult to state with precision the evidence as to the location of the wire with which the funnel came into contact. It apparently ran from the motor immediately above the tank down alongside the tank itself and to or into a floor underneath the tank. It was a black insulated wire, but a lower

portion thereof near the floor had the insulation trimmed therefrom. Plaintiff had to work in a rather close place in order to get the gasoline into the tank. While he admittedly saw the insulated wire prior to the sparks and resulting explosion, the record fails to disclose that he either saw or had a reasonable opportunity to see that a portion of the wire was uninsulated prior to the sparks coming therefrom. Plaintiff had been given no special instructions or warning as to the condition of the dragline or wire.

Under the foregoing facts and circumstances, we ■ think the trial judge was clearly correct in submitting to the jury the issue of liability, if any, on the part of the defendant.

We quote from *Tucker v. Holly Hill Lumber Co.,* ■ 200 S. C. 259, 20 S. E. (2d) 704, the following which we think is here apropos,

"It is the positive duty of the master to furnish the servant with reasonably safe instrumentalities wherewith and places wherein to do his work, and in the performance of these obligations imposed by law upon the master, the servant may assume that the master has performed such duties. This duty is a primary non-assignable duty of the master, and evidence of failure of the master to provide a reasonable safe instrumentality with which to work or place wherein to work, makes out a *prima facie* case of negligence, and any excuse for the failure is a matter of defense.

"The general rule is that a servant assumes the risk ordinarily incident to his employment, but not those due to the master's negligence. *Lewis v. Gallivan Building Company,* 87 S. C. 210, 213, 69 S. E. 212.

"The basis for denying the right of recovery to an employee who has sustained an injury under the doctrine of assumption of risk is knowledge or notice of the danger on the part of the person injured. If at the time of the injury he had no knowledge or notice of the danger to which he was subjected, he is entitled to be compensated by his em-

ployer. *Williams v. Charleston & W. C. Railway Co.,* 121 S. C. 23, 113 S. E. 300."

A true case of assumption of risk arises when an employee, without any negligence on his part or that of his employer, is injured as a result of a hazard ordinarily incident to the proper performance of the duties of his employment. *Cooper v. Mayes,* 234 S. C. 491, 109 S. E. (2d) 12.

The basis of defendant's contention as to contributory negligence is simply that plaintiff knew that gasoline had flammable qualities and that his act of allowing the gasoline can to strike the funnel with sufficient force to cause it to come in contact with the wire and create a spark was negligence as a matter of law, without which negligence on his part he would not have been injured.

With respect to this contention, "It is firmly established in this jurisdiction that if the inferences properly deducible from the evidence are doubtful, or if they tend to show both parties guilty of negligence, and there may be a fair difference of opinion as to whose act produced the injury complained of as a direct and proximate cause, then the question must be submitted to the jury." *Bruno v. Pendleton Realty Co.,* 240 S. C. 46, 124 S. E. (2d) 580, 584, 95 A. L. R. (2d) 1333.

Moreover, as above pointed out, a servant has the right to assume that the master has performed the duties imposed upon him by law, at least in the absence of anything which would reasonably put the servant on notice to the contrary. While such assumption does not relieve the servant of the duty of exercising due care for his own safety, still, in determining whether he did exercise such due care, his conduct has to be judged in the light of the assumption to which he is entitled.

It appears, only from the statement of the case, that defendant moved to dismiss the complaint on the ground "that it did not state facts sufficient to con-

stitute a cause of action", said motion apparently having been made orally immediately prior to the trial of the case, and refused. Defendant contends that such motion should have been granted, it being urged that the allegations of the complaint as to delicts of duty of the master were allegations of mere conclusions, rather than specific facts tending to show any breach of duty on the party of the master. This motion was, in effect, a demurrer, and it is well established in this state that, as against demurrer, a complaint must be construed liberally in favor of the pleader and sustained if the facts alleged and inferences reasonably deducible therefrom would entitle the plaintiff to relief on any theory of the case.

While the complaint in the instant case is far from a model one, we think that, when given the liberal construction to which it is entitled, there was at least no prejudicial error in overruling defendant's motion. Under the circumstances, had the judge deemed the motion meritorious, the plaintiff would have been entitled to an opportunity to amend his complaint to cure the alleged defects therein. *Tobias v. Carolina Power & Light Co.*, 190 S. C. 181, 2 S. E. (2d) 686. There is no contention that the defendant was surprised by any of the evidence adduced under the complaint which it contends was defective, and no showing of any prejudice otherwise to any substantial right of the defendant.

In 5 Am. Jur. (2d) 236, Appeal and Error, Sec. 795, it is said,

"It is an almost universal rule that a verdict will cure defects in the pleadings unless the substantial rights of the adverse party have been prejudiced."

We conclude that the exceptions are all without merit, and the judgment of the lower court is, accordingly,

Affirmed.

Moss, C. J., and Lewis, Brailsford and Littlejohn, JJ., concur.