Concrete Service Corp. v. Investors Group, Inc.

---

CONCRETE SERVICE CORP. v. INVESTORS GROUP, INC., C. PAUL ROBERTS, TIMOTHY E. OATES, AND BARBARA SUMMEY

No. 8514DC935

(Filed 18 March 1986)

1. **Rules of Civil Procedure § 12.1— denial of motion to dismiss for failure to state claim—no review on appeal**

    Where an unsuccessful motion to dismiss is grounded on an alleged insufficiency of the facts to state a claim for relief, and the case thereupon proceeds to judgment on the merits, the unsuccessful movant may not on an appeal from the final judgment seek review of the denial of the motion to dismiss.

2. **Evidence § 31— list of bank accounts and signatories—document not authenticated—best evidence not offered**

    In an action by plaintiff supplier to recover an amount due for building materials where defendant claimed that checks were written on his account without his consent, the trial court did not err in excluding a list of bank accounts and the authorized signatories since defendant argued that the document was properly authenticated by his testimony and he offered no other authentication; and the original signature cards were the best evidence but no reason was given for their non-production. N.C.G.S. 8C-1, Rules 901(b)(1), 1002.

3. **Rules of Civil Procedure § 15.1— amendment of pleadings to add defendant— no abuse of discretion**

    The trial court did not err in granting plaintiff's motion to amend its pleadings to add one particular defendant on its claims for unfair trade practices, since defendant did not specifically object to evidence outside the scope of the original pleadings; the complaint gave defendant ample notice of the transactions at issue; and the amendments merely added another legal theory of liability on the very same facts.

4. **Unfair Competition § 1— actions intended to deceive creditors—unfair and deceptive trade practice—sufficiency of evidence**

    The trial court's conclusion that defendant engaged in actions intended to deceive creditors into extending credit and that these practices were forbidden by N.C.G.S. 75-1.1 was amply supported by the findings of fact which were supported by evidence that defendant knew his codefendant had no credit and that the codefendant did business through various corporate and other entities

and not in his own name so as to induce people to do business with and extend credit to him; defendant, with this knowledge, supplied his codefendant with letters which enabled the codefendant to obtain credit from plaintiff and other suppliers; defendant maintained a checking account designated "Timothy E. Oates, Attorney-Special Account" and allowed his codefendant to use the account; and defendant failed to notify the bank to stop use of his name on the account.

**5. Attorneys at Law § 7.5— unfair trade practices—award of attorney fees proper**

Where the trial court determined that defendant engaged in unfair trade practices by deceiving creditors and making an unwarranted refusal to pay for materials supplied by plaintiff, it was within the discretion of the trial court to award plaintiff attorney fees.

APPEAL by defendant Timothy E. Oates from *LaBarre, Judge.* Judgment entered 18 April 1985 in District Court, DURHAM County. Heard in the Court of Appeals 4 February 1986.

Plaintiff supplier sued to obtain amount due for building materials, plus treble damages and attorney fees. Defendants Roberts and Oates, through the corporation they controlled, defendant Investors Group, had obtained the materials from plaintiff. Oates, an attorney, was Roberts' son-in-law. Since Roberts had only recently been released from prison and could not obtain credit, Oates gave him letters on Oates' legal stationery and signed by Oates. The letters read in part: "I am in the process of building a law office . . . I am requesting information by [sic] your company on how to set up a line of credit so that I may purchase the materials. . . . I desire to buy materials from your company and be billed on a monthly basis." The letters included a direction, "Please bill to: Investors Group, Inc." Oates attached his personal financial statement to the letters. The letters were not addressed. Roberts delivered these letters to several suppliers, including plaintiff. Plaintiff subsequently supplied the materials, payment for which is at issue here.

In addition to using Oates' request for credit and financial statement, Roberts used a checking account designated "Timothy E. Oates, Attorney-Special Account." Defendant Summey, Roberts' secretary, signed checks drawn on the account. Oates claimed that he discovered that Roberts was using the account for his construction business, and demanded that he stop. Nevertheless, a check on the account, signed by Summey, was thereaf-

ter sent to plaintiff in payment of Investors Group's outstanding balance, some $5,600. The check, like many others written on the account, was returned for insufficient funds. Investors Group then gave plaintiff a promissory note representing the balance, but no payments were ever made on it.

Plaintiff demanded payment from Oates, Roberts and Summey, but no payment was made. Plaintiff then instituted this action, which resulted in a judgment that plaintiff had been injured in the amount of the outstanding balance, that defendants' business practices were intended to and did deceive creditors, and that plaintiff was entitled to treble damages and attorney fees. From the judgment only defendant Oates (all references hereafter to "defendant" are to Oates) appeals.

*Powe, Porter and Alphin, by Edward L. Embree, III, for plaintiff-appellee.*

*B. J. Sanders for defendant-appellant Timothy E. Oates.*

EAGLES, Judge.

I

[1] Defendant first assigns error to the denial of his motion to dismiss the action for failure to state a claim against him, made at the beginning of trial. Defendant urges that we view the motion to dismiss as a "freeze-frame," considering it in light of the pleadings as they stood at the time the motion was made.

The Supreme Court recently held that the denial of a motion for summary judgment is not reviewable on appeal from final judgment:

The purpose of summary judgment is to bring litigation to an early decision on the merits without the delay and expense of a trial when no material facts are at issue. [Citation.] After there has been a trial, this purpose cannot be served. Improper denial of a motion for summary judgment is not reversible error when the case has proceeded to trial and has been determined on the merits by the trier of the facts, either judge or jury.

The denial of a motion for summary judgment is an interlocutory order and is not appealable. An aggrieved party

> may, however, petition for review by way of certiorari. [Citation.] To grant a review of the denial of the summary judgment motion after a final judgment on the merits, however, would mean that a party who prevailed at trial after a complete presentation of evidence by both sides with cross-examination could be deprived of a favorable verdict. This would allow a verdict reached after the presentation of all the evidence to be overcome by a limited forecast of the evidence.

*Harris v. Walden*, 314 N.C. 284, 286, 333 S.E. 2d 254, 256 (1985); *see also MAS Corp. v. Thompson*, 62 N.C. App. 31, 302 S.E. 2d 271 (1983) (identical result). This same logic should apply to denials of motions to dismiss based on an alleged failure to give notice of facts stating a claim.

A motion to dismiss under G.S. 1A-1, R. Civ. P. 12(b)(6) generally tests the legal sufficiency of the complaint: Has the pleader given notice of such facts as will, if true, support a claim for relief under some legal theory? *See Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970). An incorrect choice of legal theory should not result in dismissal where the pleader has given sufficient notice of facts concerning the wrong complained of. *Jones v. City of Greensboro*, 51 N.C. App. 571, 277 S.E. 2d 562 (1981). The motion does not present the merits, but only whether the merits may be reached. *See Wilkes v. N.C. State Bd. of Alcoholic Control*, 44 N.C. App. 495, 261 S.E. 2d 205 (1980). As the United States Supreme Court has stated with respect to the similar provisions of Fed. R. Civ. P. 12(b), "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L.Ed. 2d 90, 96, 94 S.Ct. 1683, 1686 (1974). When following denial of the motion the court has proceeded to the merits and the fact-finder has found they support the claim, whether the initial ruling was technically correct becomes insignificant. The policy behind the Rules of Civil Procedure is to resolve controversies on the merits, not on technicalities of pleading. *Johnson v. Johnson*, 14 N.C. App. 40, 187 S.E. 2d 420 (1972). This is especially true in light of the liberal pleading now allowed, the relatively free availability of amendments, and the affirmative duty of the opponent to object to evidence as outside

the pleadings. G.S. 1A-1, R. Civ. P. 15; *Sutton v. Duke, supra; Mangum v. Surles,* 281 N.C. 91, 187 S.E. 2d 697 (1972).

Other jurisdictions support our view. "It is an almost universal rule that a verdict will cure defects in the pleadings unless the substantial rights of the adverse party have been prejudiced." 5 Am. Jur. 2d Appeal & Error Section 795 (1962). This rule was applied in *Morgan v. Roper,* 250 S.C. 280, 157 S.E. 2d 572 (1967), the court holding that defendants could not complain that the trial court overruled their demurrer following judgment on the merits against them. *See also McDonald v. Morley,* 15 Cal. 2d 409, 101 P. 2d 690 (1940) ("immaterial" whether complaint stated cause of action where evidence supported judgment); *Baughman v. Cooper-Jarrett, Inc.,* 530 F. 2d 529 (3d Cir.) (no basis or logic for reviewing interlocutory denial of motion; in fact, review might violate Seventh Amendment where case had gone to jury), *cert. denied sub nom., Wilson Freight Forwarding Co. v. Baughman,* 429 U.S. 825, 50 L.Ed. 2d 87, 97 S.Ct. 78 (1976).

A majority of this court followed analogous reasoning in *Sharpe v. Park Newspapers of Lumberton, Inc.,* -- N.C. App. ---, 337 S.E. 2d 174 (1985). There we considered whether a controversy arose from the pleadings *and* the evidence, holding that to limit our consideration to the pleadings alone, and to ignore subsequent discovery, could lead to wasteful results.

We therefore hold that the denial of defendant's motion to dismiss is not properly presented by this appeal. We are careful in so doing to distinguish cases in which the trial court denies motions based on jurisdictional or similar grounds, and there is no right of immediate appeal. In those cases the adverse party must, absent a successful petition for certiorari, submit to trial on the merits. Only then will that party have a chance to appeal denial of the original motion. *See Duke Univ. v. Bryant-Durham Electric Co., Inc.,* 66 N.C. App. 726, 311 S.E. 2d 638 (1984) (denial of motion to dismiss for lack of subject matter jurisdiction; appeal dismissed); *Henredon Furniture Industries, Inc. v. Southern Ry. Co.,* 27 N.C. App. 331, 219 S.E. 2d 238 (1975) (refusal to join parties; appeal dismissed), *disc. rev. denied,* 289 N.C. 298, 222 S.E. 2d 697 (1976). Our holding is limited: we hold only that where an unsuccessful motion to dismiss is grounded on an alleged insufficiency of the facts to state a claim for relief, and the case thereupon pro-

ceeds to judgment on the merits, the unsuccessful movant may not on an appeal from the final judgment seek review of the denial of the motion to dismiss. We therefore overrule defendant's first assignment of error.

## II

[2] Defendant assigns error to the exclusion of certain documentary evidence. Defendant claimed that the list in question (typewritten and unsigned, with no indicia of origin) stated all bank accounts of Investors Group and allied entities and the authorized signatories. He argues that the document was properly authenticated by his testimony, and therefore should have been admitted. *See* G.S. 8C-1, R. Ev. 901(b)(1). Authentication under Rule 901 is only one prerequisite to admissibility, however. The document still must satisfy other pertinent evidentiary standards. *See* 11 J. Moore, Moore's Federal Practice Section 901.04 (2d ed. 1985) (discussing identical federal rule). One of these is that to prove the content of a writing, the original is usually required. G.S. 8C-1, R. Ev. 1002. Defendant sought not only to introduce the document, but to prove that its contents were what he claimed they were, *i.e.* a list of bank accounts with the names of the persons authorized to sign on them. For this purpose the original signature cards clearly were the best evidence. No reason was given for their non-production and the court did not err in excluding the document. *Id.; see United States v. Alexander*, 326 F. 2d 736 (4th Cir. 1964).

## III

[3] Plaintiff originally raised unfair trade practices claims only against Investors Group and Roberts. By motion at the close of the evidence, plaintiff moved to amend its pleadings to add Oates as a defendant on those claims. He now argues that the court erred in allowing the motion. Under G.S. 1A-1, R. Civ. P. 15(b), a party attempting to limit the trial of issues by implied consent must object specifically to evidence outside the scope of the original pleadings; otherwise, allowing an amendment to conform the pleadings to the evidence will not be error, and, in fact, is not even technically necessary. *Mangum v. Surles, supra; Roberts v. William N. & Kate B. Reynolds Mem. Park*, 281 N.C. 48, 187 S.E. 2d 721 (1972). Defendant made no such objection. Moreover, the complaint gave defendant ample notice of the transactions at

issue. The amendment merely added another legal theory of liability on the very same facts. Defendant has failed to show any prejudice. *Estrada v. Jacques*, 70 N.C. App. 627, 321 S.E. 2d 240 (1984). On the authority of *Estrada*, and also on the ground that the record does not reflect that the statute of limitations was raised below, we also reject defendant's contention that the amendment does not relate back. We also reject defendant's argument that an earlier amendment somehow negated the original complaint: that amendment made allegations "in addition to" those originally made. There is no requirement that all claims be legally consistent. G.S. 1A-1, R. Civ. P. 8(e)(2). These assignments are overruled.

### IV

Defendant next argues that the evidence against him was insufficient, and that the court should have allowed his motion, made at the conclusion of the evidence, to dismiss under G.S. 1A-1, R. Civ. P. 41(b).

### A

Where as here the court sits as finder of fact, if it allows a Rule 41(b) motion it must find facts just as it would in entering judgment without allowing the motion. *Id.*; R. Civ. P. 52(a); *W & H Graphics, Inc. v. Hamby*, 48 N.C. App. 82, 268 S.E. 2d 567 (1980). There is therefore little point in making such a motion at the close of all the evidence. *Helms v. Rea*, 282 N.C. 610, 194 S.E. 2d 1 (1973).

### B

On appeal from a judgment containing findings of fact and conclusions of law, the appellant must except and assign error separately to each finding or conclusion that he or she contends is not supported by the evidence, then state which assignments support which questions in the brief. App. R. 10, App. R. 28. Failure to do so will result in waiver of the right to challenge the sufficiency of the evidence to support particular findings of fact. *Anderson Chevrolet/Olds, Inc. v. Higgins*, 57 N.C. App. 650, 292 S.E. 2d 159 (1982).

Here defendant did properly except to a large number of the court's findings of fact and the resulting conclusions of law. He

then correctly assigned error individually to each excepted finding and conclusion. Rather than direct this Court to the particular findings he challenges, however, defendant instead argues the general denial of his Rule 41(b) motion. He thus completely frustrates the purpose of his individual exceptions and assignments of error. We conclude that defendant thereby has reduced his appeal relative to the sufficiency of the evidence to a single broadside attack. Broadside appeals have always been deemed ineffective to challenge particular findings of fact. *Id.; Mayhew Electric Co. v. Carras*, 29 N.C. App. 105, 223 S.E. 2d 536 (1976); *see under former rules Putnam v. Triangle Publications, Inc.*, 245 N.C. 432, 96 S.E. 2d 445 (1957). Therefore the only question presented is whether the findings of fact support the conclusions of law and the conclusions support the judgment. App. R. 10(a); *Anderson Chevrolet/Olds*. We review the judgment in that light.

C

The basis of the judgment was that the defendants' acts were unfair or deceptive. Unfair or deceptive acts or practices in or affecting commerce are unlawful. G.S. 75-1.1. A precise definition of unfair or deceptive acts is not possible, but whether a particular act is unfair or deceptive depends on the facts surrounding the transaction and the impact on the marketplace. *Bernard v. Central Carolina Truck Sales, Inc.*, 68 N.C. App. 228, 314 S.E. 2d 582, *disc. rev. denied*, 311 N.C. 751, 321 S.E. 2d 126 (1984). An action for unfair or deceptive acts or practices is *sui generis. Id.* The legislation creating these actions expanded existing common law remedies. *Marshall v. Miller*, 302 N.C. 539, 276 S.E. 2d 397 (1981). Therefore, traditional common law defenses such as contributory negligence or good faith are not relevant; what is relevant is the effect of the actor's conduct on the consuming public. *Id.; Winston Realty Co., Inc. v. G.H.G., Inc.*, 314 N.C. 90, 331 S.E. 2d 677 (1985) (contributory negligence not a defense). The statutes do not protect only individual consumers, but serve to protect business persons as well. *See Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 266 S.E. 2d 610 (1980) (developers could sue mortgage lender); *Ellis v. Smith-Broadhurst, Inc.*, 48 N.C. App. 180, 268 S.E. 2d 271 (1980) (one insurance agent sued another); W. Aycock, N.C. Law on Antitrust and Consumer Protection, 60 N.C. L. Rev. 205, 215 (1982). The Supreme Court has recently expressly disapproved language of this court suggesting that a sophisticated corporate

plaintiff must exercise greater care in relying on allegedly deceptive misrepresentations. *Winston Realty, supra, disavowing Libby Hill Seafood Restaurants, Inc. v. Owens*, 62 N.C. App. 695, 303 S.E. 2d 565, *disc. rev. denied*, 309 N.C. 321, 307 S.E. 2d 164 (1983). The fact that plaintiff is a corporation is therefore immaterial. Practices are deceptive which have the capacity or tendency to deceive; proof of actual deception is not required. *Marshall v. Miller, supra*. The narrow legal limits of the law of fraud do not describe the limits of what may constitute unfair or deceptive practices. *Johnson v. Phoenix, supra; Marshall v. Miller, supra; see F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 31 L.Ed. 2d 170, 92 S.Ct. 898 (1972); *see also Bicycle Transit Authority, Inc. v. Bell*, 314 N.C. 219, 333 S.E. 2d 299 (1985) (allowing consideration of whether lease to competitor constituted unfair or deceptive act). Once it is found that the alleged acts were committed, whether they constitute unfair or deceptive acts is a question of law for the court. *Hardy v. Toler*, 288 N.C. 303, 218 S.E. 2d 342 (1975).

D

[4]   The facts found by the court clearly support its conclusion that defendant Oates engaged in unfair or deceptive acts. The court found that Oates knew that defendant Roberts had no credit and that Roberts typically did business "through various corporate and other entities and not in his own name so as to induce persons to do business and extend credit to him." The court found that Oates, with this knowledge, supplied Roberts with the letters enabling Roberts to obtain credit from plaintiff and other suppliers. (While the evidence did not expressly show whether plaintiff and other suppliers would have extended their credit to Roberts without the letters, the court found, based on the evidence, that Roberts was not himself creditworthy, necessarily implying on these facts that plaintiff extended credit in reliance on the letter.) In addition, the court found that Oates knew that Roberts was using the checking account under his (Oates') name and designated "Special Account," giving checks drawn on that account by Roberts a false appearance of the security generally accorded attorney trust accounts. More importantly, the court resolved a key question of credibility against Oates, finding that he failed to notify the bank to stop use of his name on the account. The court found that these practices were intended to deceive creditors and unfairly obtain credit. The court found that

Oates, along with the other defendants, refused to pay the amount due on the credit account thus obtained and that this refusal was unwarranted.

These findings support the court's conclusion that Oates engaged in unfair and deceptive acts. If he did not intend to honor obligations incurred on material accounts opened as a result of his letter, his letter was simply a fraud. To the extent that Oates' letter reflected a genuine commitment, his consistent avoidance of payment on the account was totally unjustified. Oates' acquiescence in the operation of the bogus special account served only to further lull creditors into a false sense of security when Oates had no intention of honoring obligations on that account. The trial court's conclusion that Oates engaged in actions intended to deceive creditors into extending credit and that these practices are forbidden by G.S. 75-1.1 is amply supported by the findings of fact and the evidence before us.

Our decision in *Pedwell v. First Union Nat'l Bank*, 51 N.C. App. 236, 275 S.E. 2d 565 (1981), supports this result. There we held that plaintiffs stated a claim under G.S. 75-1.1 by alleging that defendants conspired to defeat plaintiffs' real estate contract with one of the co-conspirators by having the other co-conspirator deny financing shortly before closing, when plaintiffs could not timely obtain alternative financing. Nothing in *Pedwell* suggested that plaintiffs would have been unable to obtain financing or purchase housing elsewhere. Nevertheless, we held that these facts stated a claim for unfair or deceptive practices. It is clear that acts designed to unfairly obtain credit are equally as unlawful as acts unfairly denying credit. Indeed, once credit has actually been extended, acts unfairly and deceptively obtaining credit have a far greater potential for actual damage. Accordingly, we conclude that the findings support the conclusions of law. These assignments are overruled.

V

[5] Finally, defendant argues that the court erred in awarding plaintiff attorney fees. By statute, such fees may be awarded upon findings that defendant willfully engaged in unlawful acts or practices, proscribed by Chapter 75, and that there was an unwarranted refusal to fully resolve the matters. G.S. 75-16.1. In addition, we have held that the complainant must show some actual

injury resulting from the violation. *Mayton v. Hiatt's Used Cars, Inc.*, 45 N.C. App. 206, 262 S.E. 2d 860, *disc. rev. denied*, 300 N.C. 198, 269 S.E. 2d 624 (1980). Award or denial of fees, even where supporting facts exist, is within the discretion of the trial judge. *Borders v. Newton*, 68 N.C. App. 768, 315 S.E. 2d 731 (1984).

The trial court made findings that defendant specifically intended to deceive creditors, satisfying the willfulness element, and that his refusal to pay was unwarranted. As a result of defendants' actions, plaintiff supplied materials and received no payment in return. This constituted the actual injury required by *Mayton*. *See Brown v. Boger*, 263 N.C. 248, 139 S.E. 2d 577 (1965) (division of land "without injury" discussed). The award of attorney fees thereafter lay in the discretion of the court. *Borders v. Newton, supra.* We perceive no abuse thereof.

Defendant Oates has failed to show any prejudicial error. Accordingly, the order appealed from is

Affirmed.

Judges ARNOLD and PHILLIPS concur.