MICHAEL ANTHONY ESTRADA v. PAUL F. JAQUES, DONALD G. DET-
WEILER, THOMAS W. POWELL AND JOHN R. MILES

No. 8315SC878

(Filed 16 October 1984)

### 1. Rules of Civil Procedure § 15— amendment of complaint—relation back to original complaint

Plaintiff's original complaint alleging that defendant surgeons were negligent in failing to obtain his informed consent to a steel coil embolization gave defendants notice of the transactions or occurrences to be proved pursuant to an amendment alleging that defendants were negligent in their treatment of plaintiff after the embolization, including performance of a remedial operation on plaintiff, so that the amendment related back to the filing of the original complaint where: the original complaint contained allegations concerning the consent obtained by defendants to the embolization and the explanation about the complications given to plaintiff by defendants; the original complaint continued with allegations that a subsequent consent was obtained for a remedial operation; the original complaint contained allegations concerning discoveries made during the remedial operation, the failure of that operation, and the subsequent amputation of plaintiff's lower leg; and the remedial operation began only three hours after the end of the embolization. G.S. 1A-1, Rule 15(c).

### 2. Rules of Civil Procedure § 15— amendment of complaint—absence of prejudice —delay beyond statute of limitations

Defendant surgeons failed to show prejudice in the trial court's allowance of an amendment of the original complaint, which related only to informed consent, to allege negligence by defendants in performing a remedial operation where defendants showed mere delay beyond the statutory period for a claim based on the remedial operation.

### 3. Courts § 9.3— amendment of complaint—overruling of another judge's order

Where the order of one superior court judge allowed an amendment to the complaint, a second superior court judge exceeded his authority by effectively overruling such order in ruling that the amendment did not relate back to the original complaint so that the claim was barred by the statute of limitations.

### 4. Appeal and Error § 16.1— no jurisdiction by trial court to dismiss appeal

The trial court had jurisdiction only for the purpose of settling the case on appeal and lacked jurisdiction to dismiss plaintiff's appeal as to two defendants where the session at which the judgment appealed from was rendered had ended, and nothing in the record suggested any intention by plaintiff to abandon his appeal.

**5. Appeal and Error § 16.1— dismissal of appeal as interlocutory—no jurisdiction in trial court**

The trial court was not authorized by the second sentence of App. Rule 25 to dismiss an appeal as interlocutory since the motions referred to in that sentence are only those for failure to comply with the Rules of Appellate Procedure or with court orders requiring action to perfect the appeal.

**6. Appeal and Error § 6.2— interlocutory appeal—motion to dismiss—when and where made**

A ruling on the interlocutory nature of an appeal is properly a matter for the appellate division, not the trial court, and since this often requires consideration of the merits, a motion to dismiss an appeal as being interlocutory should properly be filed after the record on appeal is filed in the appellate court.

**7. Appeal and Error § 2— one panel may not overrule decision of another**

A second panel of the Court of Appeals may not exercise its discretion in favor of reviewing an order of the trial division when a preceding panel has decided to the contrary.

**8. Pleadings § 42.1; Rules of Civil Procedure § 12— striking allegations in amended complaint**

The trial court properly struck informed consent allegations from an amended complaint on the ground that such allegations had already been disposed of in a summary judgment ruling. G.S. 1A-1, Rule 12(f).

**9. Appeal and Error § 6.2— summary judgment orders—failure to dispose of all claims—affecting substantial right—immediate appeal**

Although summary judgment orders disposing of informed consent claims against defendant surgeons failed to adjudicate negligent performance claims and were thus interlocutory, they affected a substantial right and were immediately appealable since (1) a jury in a trial solely on the negligent performance claim could find that an embolization procedure *was* experimental and that defendant surgeons were not negligent in failing to diagnose plaintiff's post-operative condition quickly, and if the orders relating to informed consent were reversed on a subsequent appeal, a second jury could thereafter find that the embolization procedure *was not* experimental and that defendant surgeons were not negligent in informing plaintiff of the risks of the procedure, and (2) many of the facts to be proved under each claim are identical or very closely related in time, the case is extremely complicated, and trial will require substantial expert testimony on both sides at considerable expense.

**10. Physicians, Surgeons, and Allied Professions § 17.1— informed consent—burden of proof**

In a medical malpractice case in which defendant surgeons relied on the adequacy of plaintiff's actual consent to a surgical procedure, defendants had to show conclusively (1) the circumstances surrounding the consent, (2) the risks inherent in the procedures offered, (3) the standard in the community for obtaining consent and (4) that the standard was met under the circumstances.

Only then did the burden devolve upon plaintiff to produce any evidence to rebut the validity of the consent. G.S. 90-21.13.

**11. Physicians, Surgeons, and Allied Professions § 17.1— informed consent—effect of signed consent form**

A signed consent form constitutes only some evidence of valid consent in a medical malpractice case, and summary judgment may not be granted solely thereon when the adequacy of the underlying representations is disputed.

**12. Physicians, Surgeons, and Allied Professions § 17.1— failure to obtain informed consent—summary judgment for surgeons improper**

Summary judgment was improperly entered for defendant surgeons in a malpractice action based on alleged negligence by defendants in failing to obtain plaintiff's informed consent to a surgical procedure where defendants failed to show that plaintiff was informed of the risks and hazards of the procedure when applied to the peripheral arteries operated on in plaintiff's case, and where defendants failed to relate their actions in obtaining consent to the standards of practice among members of the same health care profession. G.S. 90-21.13(a)(1) and (2).

**13. Physicians, Surgeons, and Allied Professions § 17.1— experimental procedure or treatment—informed consent**

A health care provider who offers an experimental procedure or treatment to a patient has a duty, in exercising reasonable care under the circumstances, to inform the patient of the experimental nature of the proposed procedure and the known or projected most likely risks thereof.

APPEAL by plaintiff from *Giles R. Clark, Judge* and *Barnette, Judge.* Orders entered 11 April 1983 and 8 June 1983 and judgment entered 13 June 1983, in Superior Court, ORANGE County. Heard in the Court of Appeals 9 May 1984.

*McCain & Essen, by Jeff Erick Essen and Grover C. McCain, Jr., for plaintiff appellant.*

*Yates & Fleishman, by Joseph W. Yates, III, for defendant appellees Thomas W. Powell and John R. Miles.*

*No brief for defendant appellees Paul F. Jaques and Donald G. Detweiler.*

BECTON, Judge.

This is a complex medical negligence action. Plaintiff appeals from various rulings on motions to amend pleadings, for summary judgment, and to compel discovery.

## THE MEDICAL FACTS

Plaintiff, Michael Estrada, worked in a tavern in Chapel Hill and was shot in the knee by a disruptive customer on 16 May 1979. His wound was treated at North Carolina Memorial Hospital (NCMH), with no apparent complications. Estrada developed a mass in his leg, however, and was readmitted to NCMH on 17 June 1979. The mass apparently resulted from a false aneurysm, a weakened spot in an arterial wall, which was probably caused by the passage of the bullet. Defendants Jaques and Detweiler (the radiologists) confirmed this diagnosis and consulted with defendants Powell and Miles (the surgeons) as to the proper treatment.

The surgeons agreed to the radiologists' advice that the false aneurysm be treated by means of a percutaneous steel coil embolization. Basically, this procedure, still relatively new, involved insertion of a small steel coil into the weakened artery upstream from the false aneurysm, thereby cutting off the flow of blood and preventing a rupture. The radiologists were to perform the embolization. The surgeons discussed the procedure with Estrada and obtained a signed consent from him on 18 June 1979.

At 3:00 that afternoon, the radiologists performed the embolization. At 3:30 Estrada was returned to his room, complaining that his leg was giving him severe pain. Symptoms indicated that the blood supply to the lower leg was inadequate. Estrada received anti-coagulants to prevent clotting in the capillaries in his leg, and was taken back to the operating room at 6:00 p.m. The surgeons operated for the next 16 hours, attempting to restore the flow of blood to Estrada's leg. By the time they were able to bypass the blocked area, the capillaries in Estrada's leg had ceased to function from the protracted lack of fresh blood and resultant clotting. Estrada's lower leg was amputated on 19 June 1979. Further facts are set out as necessary in the opinion.

## THE PROCEDURAL HISTORY

Estrada brought the present action against all four defendants on 26 May 1981. The original complaint alleged that the surgeons were negligent in obtaining his consent, in that they did not inform him of the "highly experimental" nature of the steel coil embolization. As to the radiologists, the complaint alleged similar negligence in failing to explain the experimental nature of

the procedure to Estrada, as well as negligence in their explanation to the surgeons and in the actual performance of the operation. The four defendants together filed an answer which admitted that the embolization was experimental, but denied any negligence. Within 30 days thereafter, the radiologists filed a separate Amended Answer which denied that the procedure was experimental. The surgeons filed a substantially identical Amended Answer.

Following discovery, the defendants filed motions for summary judgment in September 1982. Estrada moved to amend his complaint on 15 October 1982, seeking to add allegations of negligence on the part of the surgeons in their supervision and treatment of Estrada following the embolization procedure, including the remedial 16-hour operation, as well as allegations of negligence on the part of the radiologists in failing to recognize complications following the embolization. Hearing on the motions took place on 25 October 1982; the trial court granted summary judgment to all defendants on the informed consent claims, but denied the radiologists' motion with respect to the allegations of negligence by them in performing the embolization. At the same time, the court also allowed Estrada thirty days to file an Amended Complaint including the allegations of negligent treatment by the surgeons, but denied the remainder of his motion. The order was filed 29 November 1982 but, apparently because of a clerical error, Estrada never received a copy.

Upon Estrada's further discovery requests, the surgeons objected, contending that they were no longer in the case. Estrada filed a motion to amend the 29 November 1982 order, alleging non-receipt thereof and seeking (1) a corrected order allowing additional time to file an Amended Complaint and (2) a ruling that the amendment would relate back to the hearing of 25 October 1982. Judge Giles R. Clark allowed the motion by order dated 11 April 1983, and Estrada filed his Amended Complaint the next day. The Amended Complaint simply renewed verbatim the original allegations of negligence and added the portions allowed by the order of 29 November 1982. The surgeons responded, (1) contesting the trial court's jurisdiction to allow a new claim while granting summary judgment, (2) raising a statute of limitations defense, and (3) moving to strike the informed consent issue. The

radiologists responded denying negligence and also moving to strike the informed consent allegations.

By order dated 8 June 1983, trial Judge Barnette allowed the radiologists' motion to strike the informed consent allegations, and allowed certain portions of a motion by Estrada to compel discovery against the radiologists. By separate judgment dated 15 June 1983, Judge Barnette reaffirmed the dismissal of the informed consent allegations against the surgeons. In addition, he ruled that the allegations of negligence added by the amendment were interposed at the time of hearing in October 1982, not at the time of the original complaint, 26 May 1981; thus, the three-year statute of limitations barred them, and Judge Barnette awarded summary judgment on all claims as to the surgeons. Estrada appeals.

I

[1]  The first question presented is whether the court erred in granting the surgeons' motion for summary judgment on the negligence claim relating to their treatment of Estrada following the embolization. The judgment is presently appealable, since the trial court certified that there was no just reason for delay. N.C. Gen. Stat. § 1A-1, Rule 54(b) (1983). The judgment rested on the court's conclusion that the allegations, ruled to relate back to 25 October 1982, were nonetheless filed after the statute of limitations had expired and did not relate back to the original complaint.

Estrada's injuries occurred in June of 1979 and the applicable statutes of limitation require actions to be brought within three years. N.C. Gen. Stat. § 1-15(c) (1983); N.C. Gen. Stat. § 1-52(16) (1983). Estrada urges that the surgeons were put on notice of the occurrences underlying the claim, and therefore the court erred in ruling that the amendment did not relate back to the original filing of the suit in 1981 and granting summary judgment accordingly. The surgeons urge affirmance on the ground that Estrada in essence attempted to allege a new cause of action.

The critical statutory language is found in N.C. Gen. Stat. § 1A-1, Rule 15(c) (1983):

A claim asserted in an amended pleading is deemed to have been interposed at the time the claim in the original

pleading was interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading.

This rule, unlike the remainder of Rule 15, is drawn from Rule 3025 of the New York Civil Practice Law and Rules. G.S. § 1A-1, Rule 15, Comment (1983). Rule 15(c) provides for a liberal standard for relation back of amendments:

> The amended pleading will . . . relate back if the new pleading merely amplifies the old cause of action, or now even *if the new pleading constitutes a new cause of action,* provided that the defending party had originally been placed on notice of the events involved. For example, an amended cause of action for damages for breach of a contract would relate back where the original pleading alleged an action in equity to rescind the contract for fraud. (Emphasis added.)

*Id., quoting* H. Wachtell, *N.Y. Practice Under the C.P.L.R.* 141 (2d ed. 1963). Under the New York practice, amendments are allowed liberally, "almost as a matter of course." *In re Robillard's Will,* 136 N.Y.S. 2d 79, 80 (1951). This is consistent with the stated policy of the rules that leave "shall be freely given." G.S. § 1A-1, Rule 15(a) (1983).

Our Supreme Court has recently considered the application of Rule 15(c) in *Henry v. Deen,* 310 N.C. 75, 310 S.E. 2d 326 (1984). The Court declined to attempt a judicial exegesis of the rule, instead allowing it to speak for itself: the decisive test for relation back remains *notice* in the original pleading of the transactions or occurrences to be proved pursuant to the amended pleading. Applying this test, the *Henry* court ruled that the original complaint contained only allegations which *negated* the possibility of actionable negligence sought to be raised in the amendment. The original complaint repeatedly alleged that one defendant, Dr. Niazi, had never consulted with or advised the treating defendants, but had instead engaged in a civil conspiracy to create a false record of such consultation. The proposed amendment, entirely to the contrary, alleged that Dr. Niazi did actually and negligently advise the other defendants. It added a claim of negligence against Dr. Niazi, in addition to the original civil conspiracy

claim. The Court, Justices Martin and Frye dissenting, reversed this Court and upheld the trial court's denial of leave to amend.

In the present case, on the other hand, the original Complaint contained allegations concerning the consent obtained by the surgeons to the original steel coil embolization, and the explanation about the complications given to Estrada by the surgeons. The original Complaint continued with allegations that a subsequent consent was obtained for the remedial operation. More important, it contained allegations regarding discoveries made during that operation, the attempted, but failed, repair and graft undertaken during that operation, and a final allegation that, because of the damage to the arteries, Estrada's leg was amputated. The Complaint did not specify which damage caused the amputation—that caused by the steel coil or any subsequent procedure. Significantly, in light of *Henry v. Deen*, it did not in any way negate the possibility that the surgeons contributed significantly to the amputation by their negligence in performing the remedial operation. The original Complaint did allege negligence on the part of the surgeons, although only with respect to the informed consent issue. The Amended Complaint simply alleged that they were further negligent in their *treatment* of Estrada and provided seven particulars involved in the operation they performed beginning only three hours after the first one. On these pleadings, we hold that the surgeons had "notice of the transactions, occurrences, or series of transactions" in the original complaint, and that, therefore the Amended Complaint related back. G.S. § 1A-1, Rule 15(c) (1983). Our holding finds support in the opinion of Judge, now Chief Judge Vaughn in *Clary v. Nivens*, 12 N.C. App. 690, 184 S.E. 2d 374 (1971): *Clary* held that a malicious prosecution claim related back to the filing of a false arrest action, since at the very least the original pleadings placed the defendants "on notice of the events involved." 12 N.C. App. at 692, 184 S.E. 2d at 376. These defendants also had notice of the events involved; the court thus erred in granting them summary judgment for lack of relation back.

A review of New York and federal cases underscores the correctness of our ruling. In a case quite similar to the present one, an amendment adding an informed consent count to the original medical malpractice claim was allowed. *Hodaba v. Lippert*, 64 A.D. 2d 691, 407 N.Y.S. 2d 574 (1978). And in another case the

court allowed addition of a breach of contract claim to a malpractice claim already barred by the statute of limitations. *In re Robillard's Will. See also Tobias v. Kesseler*, 18 A.D. 2d 1094, 239 N.Y.S. 2d 554 (1963) (allowing malpractice claim to relate back to original assault and trespass claims). It is recognized that the federal rule on relation back is more restrictive than the North Carolina rule. *Humphries v. Going*, 59 F.R.D. 583 (E.D.N.C. 1973). Yet under the federal rule, an amendment has been allowed adding a cause of action for negligently entrusting an automobile to an alcoholic to an original personal injury claim. *Id.* Under *Humphries*, "as long as a plaintiff adheres to a legal duty breached *or* an injury originally declared on, an alteration of the modes in which defendant has breached the legal duty *or* caused the injury is not an introduction of a new cause of action." 59 F.R.D. at 587. (Emphasis added.) *Humphries* relied on *Davis v. Yellow Cab Co.*, 35 F.R.D. 159 (E.D. Pa. 1964), in which the court allowed plaintiff to add an amendment, alleging that defendant had negligently allowed its cab to roll forward injuring plaintiff, to an original complaint that defendant had negligently failed to assist plaintiff in entering the cab. These precedents clearly support our ruling that the amendment relates back in this case.

The surgeons argue that *Jirovec v. Maxwell*, 483 S.W. 2d 852 (Tex. Civ. App. 1972) requires a contrary result. Plaintiff in *Jirovec* originally sued for malpractice occurring during an operation in March. After the statute of limitations had expired, plaintiff attempted to add an amendment alleging malpractice during a corrective operation in October. The *Jirovec* Court ruled that the amendment arose out of a wholly distinct and different transaction. In this case, however, the alleged malpractice began within *three hours*, not seven months, after the end of the first operation, and the second operation was in fact described in the original complaint. *Jirovec* is inapposite.

[2] The surgeons also claim unfair prejudice from allowing the amendments. As the party opposing amendment, they carry the burden of demonstrating prejudice. *Henry v. Deen*, 61 N.C. App. 189, 300 S.E. 2d 707 (1983), *rev'd on other grounds*, 310 N.C. 75, 310 S.E. 2d 326 (1984). They argue simply that Estrada waited more than three years to amend and thereby unfairly surprised them with his new allegations of negligence. In a complicated medical malpractice case such as this one, however, and par-

ticularly when, as here, discovery has been hotly contested and important evidence turns up missing, merely showing delay beyond the statutory period will not suffice. To hold otherwise would negate the very policies embodied in Rule 15, *i.e.*, liberal allowance of amendments, and availability of relation back, to ensure that controversies are decided on the merits. *See Mangum v. Surles*, 281 N.C. 91, 187 S.E. 2d 697 (1972). The record does not disclose any attempt by the surgeons to show any other substantial grounds for their claim of unfair prejudice. Under the case law, the surgeons therefore failed to carry their burden. *See Ledford v. Ledford*, 49 N.C. App. 226, 271 S.E. 2d 393 (1980) (reasons must be set out in record), *relying on Foman v. Davis*, 371 U.S. 178, 9 L.Ed. 2d 222, 83 S.Ct. 227 (1962) (requirement of showing of undue delay, bad faith, dilatory motive, failure to cure deficiency by previous amendment, futility, or undue prejudice). *See also Ciccone v. Glenwood Holding Corp.*, 44 Misc. 2d 273, 253 N.Y.S. 2d 576 (1964) (undue prejudice when proposed amended answer raised affirmative defense of exclusivity and alleged exclusive remedy time-barred); *Perez v. Chutick & Sudakoff*, 50 F.R.D. 1 (S.D.N.Y. 1970) (amendment which would have added warranty claim unduly prejudicial when time for impleading third party thereon past). We conclude again that the trial court should not have granted summary judgment on the Amended Complaint.

[3] The procedural posture of this portion of the case further supports this conclusion. Judge Clark's 11 April 1983 order in fact allowed the amendment, and Estrada thereafter timely filed his Amended Complaint. The 11 April 1983 order stated only that the amendment related back to the 25 October 1982 hearing. The 11 April order did not reserve judgment as to the statute of limitations question. We presume that the court did not allow the amendment as a mere pointless gesture. We will *not* presume that having heard argument and allowed the amendment, Judge Clark then expected Estrada to affirmatively seek a ruling that the amendment thus allowed related back. The law does not require performance of vain acts. *Vernon v. Crist*, 291 N.C. 646, 231 S.E. 2d 591 (1977). By allowing the surgeons' motion for summary judgment on the statute of limitations defense in his order of 15 June 1983, however, Judge Barnette effectively overruled Judge Clark's prior determination; by ruling that the amendment did not relate back, he effectively denied Estrada's already granted

Estrada v. Jaques

motion. This he lacked authority to do. *Calloway v. Ford Motor Co.*, 281 N.C. 496, 189 S.E. 2d 484 (1972) (second judge may not allow motion to amend previously denied absent changed circumstances); *State v. Standard Oil Co.*, 205 N.C. 123, 170 S.E. 134 (1933) (second judge must observe terms of order allowing amendment). No change of circumstances occurred between 11 April and 15 June 1983 which would justify Judge Barnette's ruling that the amendment did not relate back. *See Calloway.*

For all of the foregoing reasons, we therefore hold that Judge Barnette erred in granting summary judgment for the surgeons on their statute of limitations defense. That portion of the order of 15 June 1983 must therefore be reversed.

II

Estrada also attempts to appeal from various orders dismissing his appeal as to the radiologists. As noted above, the radiologists had obtained summary judgment on the informed consent claims against them; the negligent performance claims against them were unaffected and remain to be tried. Estrada gave notice of appeal on 16 June 1983; he filed the record on appeal with this Court on 16 August 1983. Before the record was filed, however, on 27 July 1983, the radiologists moved in the Superior Court to dismiss Estrada's appeal as to them. Trial Judge Smith granted the motion, ruling that the orders appealed from were "interlocutory in nature." Therefore, before reaching the merits of this portion of the case, we must first determine whether or not it is properly before this Court.

A

[4] The general rule is that an appeal takes the case out of the jurisdiction of the trial court. Thereafter, pending the appeal, the trial judge is *functus officio. Wiggins v. Bunch*, 280 N.C. 106, 184 S.E. 2d 879 (1971), *reh'g denied*, 281 N.C. 317 (1972); *American Floor Machine Co. v. Dixon*, 260 N.C. 732, 133 S.E. 2d 659 (1963). The enactment of N.C. Gen. Stat. § 1A-1, Rules 59 and 60 (1983) did not change this rule. *Wiggins.* It is subject to two exceptions and one qualification:

The exceptions are that notwithstanding the pendency of an appeal the trial judge retains jurisdiction over the cause (1)

during the session in which the judgment appealed from was rendered and (2) for the purpose of settling the case on appeal. The qualification to the general rule is that 'the trial judge, after notice and on proper showing, may adjudge the appeal has been abandoned' and thereby regain jurisdiction of the cause. [Citation omitted.]

*Bowen v. Hodge Motor Co.*, 292 N.C. 633, 635-36, 234 S.E. 2d 748, 749 (1977).

We take judicial notice that Judge Smith presided over a new Session of Orange County Superior Court which began 25 July 1983. Accordingly, the first exception does not apply. And nothing in the record suggests any intention on Estrada's part, either express or implied, to abandon his appeal. Therefore the Superior Court had jurisdiction on 27 July 1983 only for the purpose of settling the case on appeal. *Id.* The record contains no indication of any dispute over the contents of the record, of any undue delay by Estrada in filing and serving a proposed record on appeal, or of any other matter which might allow the trial court to dismiss the appeal for failure to expeditiously and properly settle the record. It appears that Judge Smith lacked jurisdiction to dismiss the appeal.

B

[5] We note that the trial division does possess limited authority to dismiss appeals under Rule 25 of the Rules of Appellate Procedure. That Rule provides:

RULE 25

DISMISSAL FOR FAILURE TO COMPLY WITH RULES

If after giving notice of appeal from any court, commission, or commissioner the appellant shall fail within the times allowed by these rules or by order of court to take any action required to present the appeal for decision, the appeal may on motion of any other party be dismissed. Prior to the docketing of an appeal in an appellate court motions to dismiss are made to the court, commission, or commissioner from which appeal has been taken; after an appeal has been docketed in an appellate court motions to dismiss are made to that court. Motions to dismiss shall be supported by af-

fidavits or certified copies of docket entries which show the failure to take timely action or otherwise to perfect the appeal, and shall be allowed unless compliance or a waiver thereof is shown on the record, or unless the appellee shall consent to action out of time, or unless the court for good cause shall permit the action to be taken out of time.

4A N.C. Gen. Stat. App. I (2A), R. App. P. 25 (Supp. 1983). Taken out of context, the second sentence of the Rule might provide the trial court with authority to dismiss interlocutory appeals. However, elementary principles of construction require that words and phrases be interpreted contextually and in harmony with the underlying purposes of the whole. *Jolly v. Wright*, 300 N.C. 83, 265 S.E. 2d 135 (1980). The title and first and third sentences clearly indicate that the motions described in the second sentence are *only* those for failure to comply with the Rules of Appellate Procedure or with court orders requiring action to perfect the appeal. The commentary makes this interpretation even clearer. *See* 4A N.C. Gen. Stat. App. I (2A), R. App. P. 25, Drafting Committee Note. Notably absent from the commentary is any suggestion that the drafters intended to alter existing case law. *See Bowen v. Hodges Motor Co.* In fact, our interpretation of the Rule accords entirely with the case law, and only a narrow focus on one part of the Rule suggests anything to the contrary. Accordingly, we hold that Judge Smith acted beyond his authority in dismissing the appeal as to the radiologists as interlocutory.

## C

[6] A further consideration supports this conclusion: G.S. § 1A-1, Rule 54(b) (1983) and N.C. Gen. Stat. § 7A-27(c) (1981) do not absolutely bar appeals from other than final judgments. Orders which are technically interlocutory may properly be appealed, regardless of lack of certification under Rule 54(b), if they affect a "substantial right." N.C. Gen. Stat. § 1-277(a) (1983); N.C. Gen. Stat. § 7A-27(d) (1981); *Oestreicher v. American Nat'l Stores, Inc.*, 290 N.C. 118, 225 S.E. 2d 797 (1976). A variety of orders, including orders of the sort Estrada attempts to appeal from, have been held to affect a substantial right and thus to be immediately appealable. *See generally* 1 Strong's North Carolina Index 3d *Appeal and Error* § 6.2 (1976). The appellate division possesses sufficient authority to dispose of interlocutory appeals which do

not affect a substantial right by dismissal. It has express authority to do so on motion of the parties if the appeal is frivolous or taken solely for purposes of delay. 4A N.C. Gen. Stat. App. I (2A), R. App. P. 34 (Supp. 1983). Or it may exercise its general authority in response to motions filed under the general motions provision. 4A N.C. Gen. Stat. App. I (2A), R. App. P. 37. Or the appellate division may dismiss upon its own motion as part of its general duty to apply the laws governing the right to appeal. No hard and fast rules exist for determining which appeals affect a substantial right. *Waters v. Qualified Personnel, Inc.*, 294 N.C. 200, 240 S.E. 2d 338 (1978). Rather, such decisions usually require consideration of the facts of the particular case. *Id.* Therefore, ruling on the interlocutory nature of appeals is properly a matter for the appellate division, not the trial court. Since this often requires consideration of the merits, we note for the benefit of the bar that motions to dismiss appeals as being interlocutory should properly be filed *after* the record on appeal is filed in the appellate court.

### D

We have held that Judge Smith had no authority to dismiss the appeal as to the radiologists. Depending on our interpretation of the legal basis of the order, we could either: (1) treat Estrada's appeal as an application for certiorari, grant same, and consider the merits, N.C. Gen. Stat. § 7A-32(c) (1981); 4A N.C. Gen. Stat. App. I (2A), R. App. P. 21(a)(1) (Supp. 1983); *Ziglar v. E. I. DuPont de Nemours and Co.*, 53 N.C. App. 147, 280 S.E. 2d 510, *disc. rev. denied*, 304 N.C. 393, 285 S.E. 2d 838 (1981); or (2) treat the order as in excess of authority and void *ab initio*, and consider the purported appeal, assuming the substantial right doctrine applies, as properly before us. *Crutchley v. Crutchley*, 306 N.C. 518, 293 S.E. 2d 793 (1982) (order beyond authority of trial court void *ab initio*); *State ex rel. Comm'r of Ins. v. Rate Bureau*, 61 N.C. App. 262, 300 S.E. 2d 586, *disc. rev. denied*, 308 N.C. 548, 304 S.E. 2d 242 (1983) (situation becomes as it was prior to void order). However, the present posture of the case in this Court makes either result impossible.

[7]  Estrada has already petitioned this Court for a writ of certiorari to review both Judge Smith's order dismissing his appeal as to the radiologists and the underlying orders appealed from. A different panel of this Court denied the petition on 18 August

1983. Our Supreme Court has recently and firmly ruled that a second panel of this Court may not exercise its discretion in favor of reviewing an order of the trial division when a preceding panel has decided to the contrary. *North Carolina Nat'l Bank v. Virginia Carolina Builders*, 307 N.C. 563, 299 S.E. 2d 629, *reh'g denied*, 307 N.C. 703 (1983). We, therefore, may not treat Estrada's purported appeal as a petition for writ of certiorari.

Since Estrada also unsuccessfully petitioned for certiorari to review the underlying orders from which he attempts to appeal, and since a decision of this panel that the prior order was void and the orders are immediately appealable would effectively overrule the decision of the previous panel, we also do not treat the appeal as before us as of right. As discussed above, this does not mean that Judge Smith's order is valid, but that we will not disturb it in the unusual procedural posture of this case.

In addition, the radiologists, having succeeded in having the appeal as to them dismissed, did not participate in the settling of the record on appeal and have not submitted a brief. Under the circumstances, their failure to participate is understandable. It would thus be unfair to consider the merits of Estrada's appeal as to them. Therefore, the appeal is dismissed as to the defendant radiologists Jaques and Detweiler. Estrada's negligent performance claims against the radiologists remain to be tried, and his informed consent claim must wait appeal until a final judgment thereon.

### III

[8]   The certified judgment appealed from also struck from the amended complaint the informed consent allegations against the surgeons, which, together with the ruling that the negligence allegations did not relate back, effectively removed all actionable allegations against the surgeons. The court struck the allegations on the ground that they had already been disposed of by the summary judgment ruling of 25 October 1982 and were therefore irrelevant, immaterial and impertinent.

The trial court relied on N.C. Gen. Stat. § 1A-1, Rule 12(f) (1983) as authority for striking the allegations. Rule 12(f) allows the court to strike improper allegations from "any pleading." Although the reported cases do not address application of Rule

12(f) to allegations added under G.S. § 1A-1, Rule 15, the latter rule clearly governs pleadings practice, and motions to strike logically are available to test amended as well as original complaints. The purpose of Rule 12(f) is to avoid expenditure of time and resources before trial by removing spurious issues, whether introduced by original or amended complaint. *See Sidney-Vinstein v. A. H. Robins Co.*, 697 F. 2d 880 (9th Cir. 1983) (construing identical federal rule); 2A J. Moore & J. Lucas, *Moore's Federal Practice* § 12.21 (2d ed. 1984). The trial court clearly acted correctly in granting the motion to strike.

## IV

[9]    Estrada urges that we go beyond the certified judgment and consider the merits of the underlying orders. The orders themselves disposing of the informed consent allegations against the surgeons are interlocutory. They adjudicated "fewer than all the claims" and the trial court did not certify that there existed no just reason for delay in entering judgment thereon. Therefore no appeal would ordinarily lie. G.S. § 1A-1, Rule 54(b) (1983). The petition for certiorari previously denied also requested review of the underlying orders relative to these defendants, the surgeons, so that for the reasons discussed in the previous section we cannot treat this as a petition for certiorari under G.S. § 7A-32(c) (1981). *North Carolina Nat'l Bank v. Virginia Carolina Builders.* Therefore, the only way these orders may be reviewed is if they affect a substantial right and are appealable of right. G.S. § 1-277(a) (1983); G.S. § 7A-27(d) (1981).

Whether a substantial right is affected usually depends on the facts and circumstances of each case and the procedural context of the orders appealed from. *Waters v. Qualified Personnel, Inc.*, 294 N.C. 200, 240 S.E. 2d 338 (1978). The necessity of a second trial, standing alone, does not affect a substantial right. *Blackwelder v. Dep't of Human Resources*, 60 N.C. App. 331, 299 S.E. 2d 777 (1983). However, in certain cases the appellate courts have held that a plaintiff's right to have all his claims heard before the same jury affects a substantial right. *Bernick v. Jurden* (possibility of inconsistent verdicts); *Swindell v. Overton*, 62 N.C. App. 160, 302 S.E. 2d 841 (1983), *rev'd on other grounds*, 310 N.C. 707, 314 S.E. 2d 512 (1984).

In the trial solely on the *negligent performance issue* in this case, a jury could find that the embolization procedure *was* experimental, and that the surgeons were therefore not negligent in failing to diagnose Estrada's post-operative condition quickly, as alleged in the Amended Complaint. Then, if the orders relating to *informed consent* were reversed on a subsequent appeal, a second jury could thereafter find that the embolization procedure *was not* experimental, and that the surgeons were not negligent in informing Estrada of the risks of the procedure. Further, many of the facts to be proved under each claim are identical and/or very closely related in time, and the case is extremely complicated. *See Swindell v. Overton.* Trial will undoubtedly require substantial expert testimony on both sides at considerable expense. *Harrell v. Harrell* (expense of interlocutory procedure justified immediate appeal); *King v. Premo & King, Inc.*, 258 N.C. 701, 129 S.E. 2d 493 (1963) (estate available to creditors diminished by interlocutory costs; immediately appealable). Accordingly, we hold that a substantial right is affected and this portion of the appeal is before this Court of right.

A

The underlying order in question granted summary judgment to the surgeons. Summary judgment is appropriate when the movant establishes a complete defense, *Ballinger v. N.C. Dep't of Revenue*, 59 N.C. App. 508, 296 S.E. 2d 836 (1982), *cert. denied*, 307 N.C. 576, 299 S.E. 2d 645 (1983), or when there is no genuine issue of material fact. *Best v. Perry*, 41 N.C. App. 107, 254 S.E. 2d 281 (1979). In considering such motions, the court must accept the evidence in favor of the non-movant in the light most favorable to that party, with all favorable inferences therefrom. *Whitley v. Cubberly*, 24 N.C. App. 204, 210 S.E. 2d 289 (1974). The court must consider all papers before it, including the pleadings. *See Seay v. Allstate Ins. Co.*, 59 N.C. App. 220, 296 S.E. 2d 30 (1982). Since questions of reasonable care under the circumstances constitute the controverted issues in negligence cases, such as this one, summary judgment is less suitable. *Bernick v. Jurden.*

B

Summary judgment here was on allegations that the surgeons were negligent in failing to obtain Estrada's informed con-

sent. Such causes of action fall under the purview of N.C. Gen. Stat. § 90-21.13 (1981), which provides in relevant part:

> (a) No recovery shall be allowed against any health care provider upon the grounds that the health care treatment was rendered without the informed consent of the patient or the patient's spouse, parent, guardian, nearest relative or other person authorized to give consent for the patient where:

> (1) The action of the health care provider in obtaining the consent of the patient or other person authorized to give consent for the patient was in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities; and

> (2) A reasonable person from the information provided by the health care provider under the circumstances, would have a general understanding of the procedures or treatments and of the usual and most frequent risks and hazards inherent in the proposed procedures or treatments which are recognized and followed by other health care providers engaged in the same field of practice in the same or similar communities; or

> (3) A reasonable person, under all the surrounding circumstances, would have undergone such treatment or procedure had he been advised by the health care provider in accordance with the provisions of subdivisions (1) and (2) of this subsection.

> (b) A consent which is evidenced in writing and which meets the foregoing standards, and which is signed by the patient or other authorized person, shall be presumed to be a valid consent. This presumption, however, may be subject to rebuttal only upon proof that such consent was obtained by fraud, deception or misrepresentation of a material fact.

> (c) A valid consent is one which is given by a person who under all the surrounding circumstances is mentally and physically competent to give consent.

Under subsection (b), a signed consent, as was obtained in the present case, is presumed valid only if it "meets the foregoing standards," clearly those of subsection (a). The consent form itself is not conclusive. In order to obtain summary judgment, the physician-defendant must establish, as a matter of law, that the informed consent was obtained in accordance with the professional standard of practice in the community, subsection (a)(1), and that under the circumstances a reasonable person would have the requisite general understanding, subsection (a)(2). Since the general understanding must be of the "procedures or treatments and of the usual and most frequent risks and hazards" inherent therein, subsection (a)(2), the physician-defendant must also establish those risks and hazards. Or, the defendant may establish that if such procedures *had* been followed, a reasonable person would have consented, under the circumstances, subsection (a)(3). In either case, the question is one of reasonableness under the circumstances. Defendants' burden becomes a heavy one indeed, since questions of reasonableness must ordinarily go to the jury. *Ballenger v. Crowell*, 38 N.C. App. 50, 247 S.E. 2d 287 (1978).

[10] In the present case, since the physicians chose to prove the adequacy of the actual consent, they had to show conclusively (1) the circumstances surrounding the consent, (2) the risks inherent in the procedures offered, (3) the standard in the community for obtaining consent and (4) that the standard was met under the circumstances. Only then did the burden devolve upon Estrada to produce any evidence to rebut the validity of the consent. *Whitley v. Cubberly*, 24 N.C. App. 204, 210 S.E. 2d 289 (1974) (when burden shifts).

The decisions of other states which have adopted similar statutes support our interpretation of the North Carolina statute. *See LaCaze v. Collier*, 416 So. 2d 619 (La. App. 1982), *aff'd*, 434 So. 2d 1039 (La. 1983) (Dennis, J., concurring at 437 So. 2d 869 (La. 1983)) (La. Rev. Stat. Ann. § 40:1299.40 (West 1977)) (proof of risks required); *Valcin v. Public Health Trust*, --- So. 2d --- (Fla. App. 1984) (Fla. Stat. Ann. § 768.46 (West Cum. Supp. 1984)) (expert evidence required). In *Valcin* the Court reversed a summary judgment for the defendant hospital, holding under virtually identical statutory language that the presumption of validity could not attach on such a motion until the defendants had conclusively shown what information was required by standard prac-

tice to be conveyed to the patient under the circumstances. "Simply stated, no presumption of a valid consent will arise unless the consent is an informed consent." --- So. 2d at ----.

[11]   The General Assembly of North Carolina similarly chose not to give the signed consent form conclusive weight. *Compare* Ga. Code Ann. § 31-9-6 (1982) *and Simpson v. Dickson*, 167 Ga. App. 344, 306 S.E. 2d 404 (1983) (form describing treatment conclusive). The form thus constitutes only *some* evidence of valid consent, and summary judgment may not be granted solely thereon when, as here, the adequacy of the underlying representations is disputed.

## C

[12]   We have reviewed the mass of depositions filed in this cause with care, and conclude that they do not justify summary judgment for the surgeons.[1] The physical condition of Estrada's leg before the operations and his general health appear undisputed.

At the time of the interview at which the procedures were offered, however, the evidence conflicted as to Estrada's ability to understand the situation. The surgeons' testimony indicated that he was alert and appeared able to comprehend their explanations; in addition, Estrada himself admitted in his deposition that he had no trouble understanding and had no unanswered questions. The only attempt by Estrada to contradict these admissions consisted of a physician's affidavit that the medications administered prior to the interview rendered Estrada incapable of giving consent. Other than conclusory statements that Estrada was incapable of giving his consent, the affidavit does not appear to set forth "specific facts showing that there is a genuine issue for trial." N.C. Gen. Stat. § 1A-1, Rule 56(e) (1983). Clearly non-expert opinion on ultimate issues may not be relied on to defend against summary judgment. *Singleton v. Stewart*, 280 N.C. 460, 186 S.E.

---

1. We note that filing of depositions in support of summary judgment is permissive. N.C. Gen. Stat. § 1A-1, Rule 56(e) (1983). It would undoubtedly facilitate decision-making at the trial court and appellate levels if, rather than allowing parties to dump upon them hundreds of pages of testimony, much of it irrelevant (as in the present case), the trial courts required movants for summary judgment to make at least some effort to identify what they contend would justify summary judgment in their favor.

2d 400 (1972). Whether expert opinion on ultimate issues so presented may be relied on is not clear. *See Mann v. Virginia Dare Transp. Co.*, 283 N.C. 734, 198 S.E. 2d 558 (1973) (expert allowed to give positive opinion at trial); N.C. Gen. Stat. § 8C-1, Rule 704 (Supp. 1983) (effective 1 July 1984); *see under Federal Rule Case & Co. v. Bd. of Trade*, 523 F. 2d 355 (7th Cir. 1975) (admissibility at trial determinative); *compare Mapco, Inc. v. Carter*, 573 F. 2d 1268 (Emer. Ct. App.), *cert. denied*, 437 U.S. 904, 57 L.Ed. 2d 1134, 98 S.Ct. 3090 (1978) (considered only under exceptional circumstances). We will assume without deciding that the affidavit carried no evidentiary weight.

### D

Even with the foregoing assumption, the surgeons failed to satisfy the second requirement of subsection (a)(2) conclusively. It is clear that Estrada understood the procedures offered. However, under the statute, knowledge of the procedures does not suffice; the patient must also be informed of their "usual and most frequent risks and hazards." G.S. § 90-21.13(a)(2) (1981). Obviously, Estrada could only understand *what the surgeons told him*. A careful reading of his whole deposition leads to the conclusion that they informed Estrada only of the risks inherent in the standard surgical procedure and the chance that the embolization might not work. The various depositions of the hospital personnel reflect at best a vague knowledge of the risks of embolization in this sort of case. This knowledge, on the present record, is traceable exclusively to a single medical article and to the ill-defined experience of one of the radiologists, apparently including only one prior operation, with little to suggest he communicated it to the surgeons. There was some evidence that steel coil embolizations had been used in other parts of the body with low risk, but nothing to show why that knowledge should automatically apply to the peripheral arteries operated on in this case.

This omission is critical in light of the evidence that such arteries presented additional difficult problems of size and accessibility. We conclude that this evidence failed to satisfy the surgeons' burden of proof.

### E

Our review of the depositions also reveals no testimony addressing "the standards of practice among members of the same

health care profession" and the relation, if any, of the actions of the surgeons in obtaining Estrada's consent to such standard. G.S. § 90-21.13(a)(1) (1981). The surgeons described generally their usual procedure, but did not attempt to relate it to any standard professional practice. Again, they failed to meet their burden. As we have indicated above, they cannot rely solely on the admissions of Estrada to obtain summary judgment. We conclude that in obtaining consent, the surgeons failed to show conclusively that their actions were reasonable under the circumstances, and summary judgment in their favor was error.

F

[13]   Since in light of our interpretation of G.S. § 91-20.13 (1981), the matter will certainly arise upon remand, we address a further feature of the case. Estrada argues that the embolization procedure was experimental and that the surgeons had a duty to so inform him. In their initial Answer, all defendants admitted that the embolization procedure was experimental. Although their Amended Answers denied this, the original Answer remained admissible against them. *See Stone v. Guion*, 222 N.C. 548, 23 S.E. 2d 907 (1943) ("always admissible"); Annot., 52 A.L.R. 2d 516, 533-40 (1957); 3 J. Moore, *Moore's Federal Practice* § 15.08[7] (2d ed. 1984) (admissible though not conclusive). Repeated discovery requests revealed only the one article and one operation mentioned above, and only general assertions of personal experience, none by the surgeons. This constituted substantial evidence that the procedure as used was in fact experimental.

Accepting this evidence as true, the consent obtained failed to satisfy the statutory requirements. The statute requires "a general understanding . . . of the usual and most frequent risks and hazards inherent in the proposed procedures or treatments *which are recognized and followed by other health care providers. . . .*" G.S. § 90-21.13(a)(2) (1981) (emphasis added). While the emphasized language is not entirely clear, it appears to require that informed consent be obtained to *established* procedure or treatments. Obviously, experimental procedures, by their very untested nature, do not fall within the category of practices described. Just as obviously, on the other hand, medical innovation must go forward, and there will also be some cases in which no recognized procedure will offer any prospect of success. We do

not believe the legislature intended to preclude any valid consent to experimental procedures.

Instead, we hold that where the health care provider offers an experimental procedure or treatment to a patient, the health care provider has a duty, in exercising reasonable care under the circumstances, to inform the patient of the experimental nature of the proposed procedure. With experimental procedures the "most frequent risks and hazards" will remain unknown until the procedure becomes established. If the health care provider has a duty to inform of *known* risks for *established* procedures, common sense and the purposes of the statute equally require that the health care provider inform the patient of any *uncertainty* regarding the risks associated with *experimental* procedures. This includes the experimental nature of the procedure and the *known or projected most likely risks*. The evidence presented in this case illustrates the logic of our holding perfectly: taken in Estrada's favor, it shows that the surgeons presented a full picture of the risks of the surgical procedure and simply advised him that the embolization might not work, without informing him of its experimental nature and their consequent lack of knowledge of the risks of whether it would fail or not. Not surprisingly, Estrada chose the experimental procedure. Such actions by the surgeons do not comport with the reasonable disclosure standards established by G.S. § 90-21.13 (1981).

G

Our decision that health care providers must inform their patients that proposed procedures are experimental accords with the majority of courts and commentators which have considered the problem. One federal court has explicitly established such a rule, that the patient "must always be fully informed of the *experimental nature* of the treatment *and* of the foreseeable consequences of that treatment." *Ahern v. Veterans Admin.*, 537 F. 2d 1098, 1102 (10th Cir. 1976) (emphasis added). Partially in response to *Ahern*, the Food and Drug Administration has adopted a specific requirement in its informed consent regulations that any procedures which are experimental be disclosed, 46 Fed. Reg. 8,942, 8,944, and 8,951 (1981), as codified at 21 C.F.R. § 50.25(a)(1) (1984). The Supreme Court of Montana has recognized an informed consent cause of action where plaintiff alleged that the

procedure was experimental and that the physician did not disclose this, even though plaintiff was fully informed of the nature of the operation itself. *Monroe v. Harper*, 164 Mont. 23, 518 P. 2d 788 (1974). In a Texas case, a directed verdict for a doctor was reversed, since although he showed that his procedure was similar to previous operations, he did not inform the patient that it was the first time he employed a certain type of skin graft. *Wilson v. Scott*, 412 S.W. 2d 299 (Tex. 1967). In *Karp v. Cooley*, 493 F. 2d 408 (5th Cir.), *cert. denied*, 419 U.S. 845, 42 L.Ed. 2d 73, 95 S.Ct. 79 (1974), on the other hand, the court held that since the patient consented to all stages of the operation and there was no showing of concealment of material information, directed verdict for the physician was proper, despite plaintiff's contention that the procedure essentially constituted an experiment. We follow *Ahern* and *Monroe*, however.

In doing so, we also follow the great bulk of the commentators. The underlying tort principles of rationality that require informing before operating clearly demand more information when the proposed procedure is new and untested. *See* Comment, *Informed Consent as a Theory of Medical Liability*, 1970 Wis. L. Rev. 879, 890 (stricter standard imposed); J. Waltz & T. Scheuneman, *Informed Consent to Therapy*, 64 Nw. U. L. Rev. 628, 640 (1970) (reasonable to require more information for more thorough consideration). Others have recognized that although in some instances the physician may withhold information regarding the experiment, this should only occur in exceptional cases. Note, *Experimentation on Human Beings*, 20 Stan. L. Rev. 99 (1967); G. Annas, *The Law of Informed Consent to Human Experimentation* (1976), *cited in* 46 Fed. Reg. 8,942, 8,943 (1981). The psychology of the doctor-patient relation, and the rewards, financial and professional, attendant upon recognition of experimental success, increase the potential for abuse and strengthen the rationale for uniform disclosure. We have found little authority supporting a contrary rule. Accordingly, we reaffirm our holding that reasonable standards of informed consent to an experimental procedure require disclosure to the patient that the procedure is experimental.

The result of our opinion is therefore as follows: That portion of the judgment of 15 June 1983 in favor of the surgeons Miles and Powell which granted them summary judgment on Estrada's negligent performance claims is reversed. That portion of the same judgment striking certain allegations from the amended complaint is affirmed; however, because we have reviewed the underlying summary judgment order on appeal, and found it erroneous, these allegations, of failure of informed consent, are reinstated. As to the informed consent allegations against the radiologists, the appeal must be dismissed.

Affirmed in part; reversed in part; dismissed in part.

Judges WELLS and JOHNSON concur.