MARTIN MARIETTA TECHNOLOGIES, INC. AND MARTIN MARIETTA MATERIALS, INC., PLAINTIFFS v. BRUNSWICK COUNTY, NORTH CAROLINA, DEFENDANT

No. COA96-1168

(Filed 15 July 1997)

**Appeal and Error § 87 (NCI4th)— mining—order declaring county ordinance void—not immediately appealable by county**

A summary judgment order declaring void a county ordinance prohibiting the use of explosives combined with dewatering as a mining technique within five miles of an ammunition depot or a nuclear power plant did not affect a substantial right of the county and was a nonappealable interlocutory order since a determination as to whether plaintiff mining company could mine on a proposed site would be made by the DEHNR and not by the county; any potential conflict between the ordinance and a mining permit will not arise until a permit is issued; and until a permit is granted by the DEHNR, a declaration of the parties' rights is inappropriate.

**Am Jur 2d, Appellate Review §§ 84 et seq.**

**Comment Note.—Formal requirements of judgment or order as regards appealability. 73 ALR2d 250.**

Appeal by defendant from orders entered 31 July 1995, 7 June 1996, and 10 July 1996 by Judge Ronald L. Stephens in Brunswick County Superior Court. Heard in the Court of Appeals 14 May 1997.

**MARTIN MARIETTA TECHNOLOGIES v. BRUNSWICK COUNTY**

[126 N.C. App. 806 (1997)]

*Poyner & Spruill, L.L.P., by Cecil W. Harrison, Jr. and Robin T. Morris; and Frink, Foy, Gainey & Yount, P.A., by Henry G. Foy; for plaintiffs-appellees.*

*Faison & Gillespie, by Reginald B. Gillespie, Jr., Michael R. Ortiz and Keith D. Burns, for defendant-appellant.*

WALKER, Judge.

Plaintiffs Martin Marietta Technologies, Inc. and Martin Marietta Materials, Inc. (collectively "MM") are in the business of operating crushed stone quarries and mining limestone. In late 1990, MM obtained information about a potentially large limestone deposit in Brunswick County. After test drilling for limestone, MM decided to move forward with efforts to develop a quarry.

Between March of 1991 and September of 1993, MM negotiated with property owners near the tract on which the limestone deposit was located in order to acquire interests in their property. MM eventually obtained the necessary interests in five contiguous parcels for the proposed mining site.

The proposed mining site is surrounded by man-made hazards, areas of environmental concern, residences, and a highway. The north and east boundaries of the site abut the Ammunition Depot, a shipping and storage facility for military ammunition and other explosive materials. Portions of the road over which these explosives are shipped also run adjacent to the proposed mining site. The southern boundary of the site abuts the property of the CP&L Nuclear Power Plant and two commercial nuclear reactors. Electric power transmission lines run to and from the power plant across the proposed mining site. In addition, a railroad spur used by CP&L to ship spent nuclear fuel rods crosses the site. The southern boundary of the proposed mining site also backs up to the Walden Creek estuarine system and homes on Bethel Church Road. The western boundary of the site abuts North Carolina Highway 133, a major artery in Brunswick County which supports the vast majority of commuter traffic between Southport and Wilmington.

MM intends to operate a pit mine on the mining site. The pit is expected to reach one hundred feet in depth. Because the pit will extend below the water table, MM will have to pump water from the pit in order for its equipment to work in the pit. Approximately ten million gallons of water will be pumped out of the pit daily. Two hun-

dred thousand tons of limestone are planned to be extracted from the mine during the first year, and this amount will increase to one million tons per year by the tenth year of operation. MM plans to continue the mining operation for approximately eighty years.

On 4 January 1994, in response to growing concern regarding the impact of the use of explosives combined with dewatering on the areas surrounding the proposed mining site, defendant Brunswick County (the County) passed an ordinance prohibiting the use of explosives combined with dewatering as a mining technique within a five-mile radius of the Ammunition Depot or the CP&L nuclear power plant.

MM filed this action challenging the ordinance on 27 September 1994, alleging eight causes of action, including five claims for declaratory relief. The County filed a motion to dismiss and an alternative motion to stay for lack of ripeness, both of which were denied. MM later moved for summary judgment, which the trial court granted on 7 June 1996 as to four of MM's eight claims: common law and statutory vested rights, preemption, and failure of the County to comply with notice requirements in adopting the ordinance. The trial court also declared the ordinance void. On 20 June 1996, MM withdrew its mining permit application. The County then filed motions to vacate the summary judgment order and dismiss the action. These motions were also denied.

On appeal, the County contends the trial court erred in denying its motions to dismiss and in granting summary judgment for MM. However, it is unnecessary for us to address these arguments, as the County's appeal is interlocutory and must be dismissed.

An order is interlocutory in nature "if it does not determine the issues but directs some further proceeding preliminary to final decree." *Blackwelder v. Dept. of Human Resources*, 60 N.C. App. 331, 333, 299 S.E.2d 777, 779 (1983). "There is generally no right to appeal an interlocutory order." *N.C. Dept. of Transportation v. Page*, 119 N.C. App. 730, 733, 460 S.E.2d 332, 334 (1995). The purpose of this rule is to avoid fragmentary, premature appeals. *Id.* There are two methods by which an interlocutory order can be immediately appealed. First, an interlocutory order can be immediately appealed if the order is final as to some but not all of the claims or parties, and the trial court certifies in the order that there is no just reason to delay the appeal. N.C.R. Civ. P. 54(b). Second, an interlocutory order can be immediately appealed under N.C. Gen. Stat. §§ 1-277(a) (1996)

and 7A-27(d)(1) (1995) "if the trial court's decision deprives the appellant of a substantial right which would be lost absent immediate review." *Page*, 119 N.C. App. at 734, 460 S.E.2d at 334.

In the present case, the trial court stated in its summary judgment order that there was no just reason to delay the appeal and that the order was final as to those claims on which summary judgment was granted in favor of MM. Nevertheless, it is the duty of this Court to determine whether an appeal is interlocutory. *See Estrada v. Jaques*, 70 N.C. App. 627, 640, 321 S.E.2d 240, 249 (1984) ("ruling on the interlocutory nature of appeals is properly a matter for the appellate division, not the trial court.") Thus, a certification by a trial court is still reviewable by this Court on appeal.

The substantial right test, which is used to determine the appealability of orders under N.C. Gen. Stat. §§ 1-277(a) and 7A-27(d)(1) "is more easily stated than applied." *Blackwelder*, 60 N.C. App. at 334, 299 S.E.2d at 780. " 'It is usually necessary to resolve the question in each case by considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered.' " *Id.* Our courts have generally taken a restrictive view of the substantial right exception. *Id.*

After reviewing the record, we fail to see how any substantial right of the County has been affected by the trial court's grant of summary judgment. The determination of whether MM can mine on the proposed site is not to be made by the County but rather by the State through the Department of Environment, Health and Natural Resources (DEHNR). According to the Mining Act of 1971, N.C. Gen. Stat. §§ 74-46 to 74-68 (1994), "[n]o operator shall engage in mining without having first obtained from the Department an operating permit that covers the affected land . . . ." N.C. Gen. Stat. § 74-50(a). The permit application process under the Mining Act is comprehensive in order to ensure that "the usefulness, productivity, and scenic values of all lands and waters involved in mining within the State will receive the greatest practical degree of protection and restoration." N.C. Gen. Stat. § 74-48(1). An applicant must submit a completed application form with reclamation plans and a bond, and DEHNR may also conduct public hearings if such hearings are deemed necessary. N.C. Gen. Stat. § 74-51(a) and (c). Further,

[a]ny permit issued shall be expressly conditioned upon compliance with all requirements of the approved reclamation plan for the operation and with any other reasonable and ap-

propriate requirements and safeguards that the Department determines are necessary to assure that the operation will comply fully with the requirements and objectives of this Article.

N.C. Gen. Stat. § 74-51(f). Thus, the permit itself sets forth the conditions under which mining is authorized, and addresses matters such as limitations on proposed mining techniques including the use of explosives.

While the Mining Act does not delegate enforcement functions to counties, it does provide that

[n]o provision of this Article shall be construed to supersede or otherwise affect or prevent the enforcement of any zoning regulation or ordinance duly adopted by an incorporated city or county or by any agency or department of the State of North Carolina, except insofar as a provision of said regulation or ordinance is in **direct conflict** with this Article.

N.C. Gen. Stat. § 74-65 (emphasis added). While the County contends this statute allows counties to restrict the locations of mines as well as activities conducted at those mines, MM contends that the ordinance at issue in this case directly conflicts with the Mining Act because it prohibits MM's project even though MM could mine if it obtained a permit from DEHNR.

The Mining Act clearly declares that DEHNR is vested with the authority to decide who will be granted mining permits in North Carolina. DEHNR also has the authority to condition a party's ability to mine on compliance with various requirements, and in doing so must attempt to protect the surrounding environment from potential hazards caused by specific projects. Because DEHNR has not yet had an opportunity to decide whether and under what conditions MM may pursue its mining project, it is premature to speculate how the ordinance in question will affect MM. If DEHNR denies MM a mining permit, the ordinance will not affect MM. On the other hand, if DEHNR grants MM a mining permit, the ordinance will only become an issue if the permit allows dewatering and the use of explosives. However, any potential conflict between the ordinance and a permit will not arise until a permit is issued. Thus, until a decision is made by DEHNR to grant MM a permit, a declaration of the parties' rights is inappropriate, and no substantial right of the County is affected.

DRYE v. NATIONWIDE MUT. INS. CO.

[126 N.C. App. 811 (1997)]

For the above reasons, we conclude that the present appeal is interlocutory and is therefore dismissed.

Dismissed.

Judges GREENE and JOHN concur.